4 U.S. 412 (____)
4 Dall. 412
The United States
versus
Richard Johns.
Supreme Court of United States.

*413 By the COURT:
Upon a habeas corpus, we are only to inquire, whether the warrant of commitment states a sufficient probable cause to believe, that the person charged, has committed the offence stated. We have heard the evidence; and cannot doubt of its sufficiency to that extent. We do not think, that the prisoner ought either to be discharged, or bailed. He must be remanded for trial.
II. When the panel of jurors was called over, the prisoner's counsel claimed the right of challenging thirty-five jurors peremptorily, as the offence, charged in the indictment, had been created, since the act of the 30th of April 1790 (1 vol. 113. s. 30.) and the right of challenge remained as at common law. 4 Hawk. 389. 4 Bl. C.. The clause, respecting challenges is in these words: "If any person, or persons be indicted of treason against "the United States, and shall stand mute, or refuse to plead, or "shall challenge peremptorily above the number of thirty-five of "the jury; orif any otherperson, orpersons, be indicted of anyother "of the offences hereinbefore set forth, for which the punishment "is declared to be death, if he or they shall so stand mute, or "will not answer to the indictment, or challenge peremptorily "above the number of twenty persons of the jury; the Court, in "any of the cases aforesaid, shall notwithstanding proceed to the *414 "trial of the person or persons so standing mute, or challenging, "as if he or they had pleaded not guilty, and render judgment "thereon accordingly."
The attorney of the district, said he was indifferent which way the Court decided the point; but it was proper to remark, that the 29th section of the judicial act referred, generally, to the state law, for the rule relating to juries; (1 vol. 67.) that the state law limited the right of peremptory challenge, in cases like the present, to the number of twenty; that the 30th section of the penal act (1 vol. 113.) obviously considers the whole law of peremptory challenge provided for, in future, as well as existing, capital cases; and that it was improper to refer to a common law rule, if a rule was prescribed by statute.
PETERS, Justice.
The words of the penal act, when they restrain the common law right of peremptory challenge, also expressly confine the operation of the restraint, to the offences before set forth in the act. For offences not set forth in the act, the only rule is furnished by the common law; and it is the privilege of the prisoner, that it should be applied and enforced.
WASHINGTON, Justice.
The right of challenge was a privilege highly esteemed, and anxiously guarded, at the common law; and it cannot be doubted, but that at the common law, a prisoner is entitled, on a capital charge, to challenge peremptorily, thirty-five of the jurors. If, therefore, the act of congress has substituted no other rule (and, in the present instance, it is clear that none has been substituted) the common law rule must be pursued.
It is not easy, indeed, to assign a reason, for introducing the words, that confine the provision, respecting peremptory challenges, to offences before set forth in the act; but it is enough to bind our judgments, that the words are actually introduced.[(2)]
III. The indictment contained four counts: 1st Count. That the prisoner being owner, in whole, of a certain ship, or vessel called the Enterprize of Baltimore, "the Baltimore Insurance Company, "by their president, and under their corporate seal attested "by their secretary did subscribe and underwrite a certain policy "of insurance upon the said ship, or vessel, called the Enterprize "in the sum of 2700 dollars upon a certain voyage &c. And the "said Richard Johns well knowing the premises with intent and "design wilfully, corruptly, unlawfully and feloniously to prejudice "the said Baltimore Insurance Company &c. and by means *415 "of the aforesaid insurance unjustly to acquire to himself unlawful "and corrupt gain and advantage on the &c. with force and "arms on the high seas &c. wilfully corruptly unlawfully and "feloniously did cast away and destroy the said ship or vessel "called the Enterprize in and upon the voyage in the said policy "of insurance mentioned &c. to the great damage of the said "Baltimore Insurance Company, against the form of the act of the "congress of the United States &c." 2d Count. That he committed the felony, by feloniously boring auger holes through the bottom of the vessel. 3d Count. That he feloniously directed and procured the vessel to be cast away and destroyed. 4th Count. That he feloniously directed and procured the vessel to be cast away and destroyed, by feloniously boring auger holes through the bottom of the vessel.
1st. The president of the Baltimore Insurance Company was offered as a witness, to prove the order for insurance, and the subscription to the policy. The prisoner's counsel objected to his competency; and cited 1 P. Wms. 595. 1 M`Nall. 52, 3. But the objection was over-ruled.
2d. A copy of the manifest of the outward cargo of the Experiment, certified under the hands and seal of the custom-house officers of Baltimore, was offered in evidence, after proof by the witness, that he had himself compared it with the record. The prisoner's counsel objected, that there was no evidence, that the original manifest was subscribed by the prisoner, or even delivered by him. The district attorney answered, that by the 21st section of the impost law (4 vol. 311, 312.) it was made the duty of the collector of the port, "to record, in books to be kept for that purpose, all manifests;" and that, being a record, the proof offered was unexceptionable.
By the COURT:
In that point of view, the evidence is clearly admissible.
3d. The policy of insurance, under the corporate seal of the company, signed by the president and attested by the secretary, was offered in evidence. The prisoner's counsel objected, that the charter of incorporation must be produced, before any corporate act, or instrument, could be given in evidence. The attorney of the district opposed the objection, on account of the difficulty, which the precedent would create in future prosecutions: but the COURT deeming it necessary to establish the corporate capacity of the Insurance Company, he read the acts of the legislature of Maryland on that subject, from the statute book, published by authority; and these being limited in their duration, he offered an exemplification of a recent act, protracting the existence of the corporation at, and beyond, the time of subscribing the policy in *416 question. The exemplification, however, was under the great seal of Maryland, but was not attested by the governor, or any other principal officer, of the state. The prisoner's counsel objected to the want of such attestation; but the objection was overruled.
By the COURT:
The act of congress declares, "that the acts of "the legislatures of the several states shall be authenticated, by having "the seal of their respective states affixed thereto." 1 vol. 115. It does not require the attestation of any public officer in this case; although in all the cases afterwards provided for, such an attestation is required. There is a good reason for the distinction. The seal is in itself, the highest test of authenticity; and leaving the evidence upon that alone, precludes all controversy, as to the officer entitled to affix the seal, which is a regulation very different in the different states.
4th. On the evidence in the cause, various grounds of defence were adopted by the prisoner's counsel, Lewis, Rawle, S. Levy, S. Ewing, and C. Ingersoll, and controverted by Dallas, attorney of the district, of which the principal were these: 1st. That the second section of the act of congress does not expressly authorise an indictment against an American citizen; and it would be an usurpation of legislative power, to extend its operation to aliens, committing offences on the high seas. 2d. That the act does not expressly embrace the case of an insurance by a corporation; and a corporation is not included in the description of persons. 3d. That the indictment describes the Experiment to be a ship or vessel, which is not sufficiently specific. 4th. That in fact, and in law, the vessel was not cast away and destroyed. 5th. That if the vessel were feloniously destroyed, the evidence does not prove the prisoner to be the felon.[(3)]
The COURT, in the charge to the jury, having reviewed and commented upon the facts, observed, that the objections, in point of law, would appear on the record, and might be taken advantage of, upon a motion in arrest of judgment. On the law, therefore, the COURT avoided giving any opinion at present, except in relation to the question,  what constituted the destruction of a ship, or vessel, within the meaning of the act of congress? On this question, they had deliberated much; and, as the result, reduced to writing an opinion, which they delivered, in charge to *417 the jury, in these words: "To destroy a vessel, is to unfit her "for service, beyond the hopes of recovery, by ordinary means. "This, in extent of injury, is synonymous with cast away. It is "the generical term: casting away is a species of destroying, as "burning is. Both mean such an act, as causes a vessel to perish, "or be lost, so as to be irrecoverable by ordinary means."
The defendant was acquitted, owing, it is believed, to a doubt, whether he had bored himself, or directed any other person to bore, the auger holes in the bottom of the vessel; which was a new vessel, picked up at sea, after she was abandoned, carried into St. Jago de Cuba, and there (the holes being discovered) soon repaired, and fitted again for sea.
NOTES
[(2)] In the case of the United States v. Russel, on an indictment for murder on the high seas, tried at October term 1806, the prisoner's counsel, at first, claimed the right of peremptorily challenging thirty-five jurors; but, that being an offence set forth in the penal law, was expressly embraced by the provision limiting the peremptory challenges to twenty; and the claim was, accordingly, over-ruled.
[(3)] In the course of the defence, the following authorities were cited: 2 East, P.C. 1097, 8. Johnson's Dict. "Cast-away." 8 Mod. 67. ca. 48. Ib. 74. ca. 52. 4 Hawk. 67, 62. 2 Burr. 1037. Plowd. 177. 1 Leach, 215. Rex v. Harrison. 2 Stra. 1241. 8 Mod. 66. 1 Hale, 635. 2 Hale, 389. 8 Inst. 202. 4 Bl. C. 881. Leach, 109. Con. Interp. 2 Hawk. c. 25. s. 58, 59. Ib. c. 23. s. 82. 2 Rol. Abr. 30. 5 Mod. 137, 8. The attorney of the district cited 1 Leach, 215. 1 Bl. C. 467. 2. Inst. 702. 1 Woodes. 195.