**STATE OF HAWAII**, Plaintiff–Appellee, v. **JOHN DUNPHY**, Defendant–Appellant

NO. 14201

(CR. NO. 88–0188)

SEPTEMBER 21, 1990

LUM, C.J., PADGETT, HAYASHI,
WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from jury convictions for one count of promoting a dangerous drug in the first degree (Hawaii Revised Statutes (HRS) § 712–1241(1)(b)(ii)(A)) and three counts of promoting a dangerous drug in the second degree (HRS § 712–1242(1)(c)). On November 8, 1985, an undercover officer of the Honolulu Police Department, Heidimarie Chung Okata (Okata), went to the Cheers Bar in the Ala Moana Hotel where appellant John Dunphy (appellant) was employed as a bartender. Okata's purpose in visiting Cheers was to purchase a half gram of cocaine. She had previously met appellant at Cheers through a third party. She sat down at the bar and asked appellant if she could purchase a half gram of cocaine. She placed $50 on the bar counter and appellant put the money in his pants' pocket. He then placed a matchbook on the bar counter. Inside the matchbook was a heat–sealed plastic packet containing a white powder which ultimately was shown to contain .44 gram of cocaine.

On November 29, 1985, the same officer went to the same place and asked appellant if she could purchase one gram of cocaine and placed $100 on the bar counter. One minute later, appellant placed a matchbook on the bar counter and took the money. Inside the matchbook were two heat–sealed plastic packets, each containing white powder. They were ultimately determined to contain .87 gram of cocaine.

On December 13, 1985, the same officer was attempting to make a purchase of a larger quantity, one–fourth of an ounce of cocaine. She telephoned the appellant at his residence and the

police taped the calls which occurred at 3:00 p.m., 5:06 p.m., and 5:07 p.m. With respect to these calls, there is a conflict in the evidence between the appellant and the officer. The officer claimed that the discussions were about the location of the transaction, while the appellant testified that he initially declined because of the amount of cocaine involved because he did not want to get involved in the middle of a transaction of that amount. He testified that the officer persisted, calling him several times, both at home and at work, told him that she had financial problems, and needed to make money by selling cocaine.

The result was that appellant asked one Dias to sell a quarter of an ounce of cocaine but Dias did not want to deal with the officer directly but only through appellant. Eventually appellant and the officer drove down Hobron Lane, stopping at the corner of Hobron Lane and Ena Road. Appellant left the car and returned with a white envelope containing a heat-sealed package. The officer gave appellant $525. The heat-sealed package contained 6.77 grams of cocaine.

On December 27, 1985, the officer again called appellant at home and their conversation was taped. She testified she told appellant she wanted to purchase an eighth of an ounce, but appellant testified that she told him she wanted to purchase a fourth of an ounce, and may or may not have stated that she still had financial problems and needed to make money. At any rate, the officer gave appellant $275 and got a package which ultimately was determined to contain 3.48 grams of cocaine.

Appellant was not indicted until February 4, 1988, more than 25 months after the last of the four incidents. The indictment contained four counts. Count I was with respect to the November 8, 1985 transaction and was a charge of promoting a dangerous drug in the second degree. Count II was with respect to the November 29, 1985 transaction and was also a charge of promoting a dangerous drug in the second degree. Count III was with respect to the

December 13, 1985 transaction and was a charge of promoting a dangerous drug in the first degree, and Count IV was a charge with respect to the December 27, 1985 transaction and was a charge of promoting a dangerous drug in the second degree.

The State's explanation for the 25–month delay in bringing the indictment is as follows:

1. The officer remained undercover until December 1986.

2. On December 9, 1986, the case was brought to the Prosecutor's Office for conferral, the final paperwork was received by the Prosecutor's screening and intake division on April 20, 1987, but the deputy prosecutor assigned to the case left the office on maternity leave on June 26, 1987.

3. The case was assigned to another deputy on June 29, 1987, who allegedly could not work on it because of his workload.

4. That deputy left the office on September 18, 1987 to work for INS.

5. On October 1, 1987, the case was reassigned to another deputy prosecutor who briefed it for grand jury presentation.

6. The grand jury presentation was finally made in February 1988.

Somewhere in that 25–month interval, the tapes of the telephone conversations with respect to the third and fourth transactions disappeared. The officer who had charge of the tapes testified:

> The tape apparently when I got promoted to lieutenant we had moved offices — when I had to get out of my office Officer Charles Tang had moved these boxes of reports, tapes and [everything] to another office which unfortunately it got misplaced. We couldn't find it among the other things besides the tapes.

Tr. 8/29/89 at 80.

On appeal, appellant claims error in the modification of an instruction on the defense of entrapment, and a denial of due

process, contrary to Section 5, Article I of the Hawaii State Constitution, due to prejudicial pre-indictment delay. The prejudice alleged is the loss of appellant's memory of the events and the loss of the tapes. With respect to the loss of the tapes, appellant's argument is that they would have shown the truth of his stated reluctance to enter into the third and fourth transactions, and given a basis for the jury to have found that he had established his defense of entrapment.

HRS § 702–237 provides:

**Entrapment.** (1) In any prosecution, it is an affirmative defense that the defendant engaged in the prohibited conduct or caused the prohibited result because he was induced or encouraged to do so by a law enforcement officer, or by a person acting in cooperation with a law enforcement officer, who, for the purpose of obtaining evidence of the commission of an offense, either:

(a) Knowingly made false representations designed to induce the belief that such conduct or result was not prohibited; or

(b) Employed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

(2) The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

With respect to the incidents of November 8 and November 29, 1985 (Counts I and II of the indictment), we need not consider appellant's contention on the instruction on entrapment since there is simply no evidence of entrapment.

Moreover, appellant made no showing of prejudice due to pre–indictment delay as to those counts, since a mere claim of loss of memory coupled with a lapse of time does not, of itself, establish prejudice for purposes of a claim of violation of due process under Article I, Section 5 of the Hawaii State Constitution. *See State v. Bryson*, 53 Haw. 652, 500 P.2d 1171 (1972); *State v. English*, 61 Haw. 12, 594 P.2d 1069 (1979); *State v. Levi*, 67 Haw. 247, 686 P.2d 9 (1984); *compare United States v. Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

When we come to the incidents of December 13, 1985 (Count III) and December 27, 1985 (Count IV), however, we have to deal with the loss of the tapes of conversations which might have demonstrated appellant's reluctance to engage in those transactions, and caused the jury to believe that the officer had "[e]mployed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it."

It has been argued that our recent decision in *State v. Matafeo*, 71 Haw. 183, 787 P.2d 671 (1990), precludes reversal in this case. *Matafeo* is, however, distinguishable. The evidence which had disappeared in *Matafeo* were items of clothing of the alleged rape victim. There was no dispute in the evidence that the crotch of the white panties, which had disappeared, were ripped. In *Matafeo* the defense was speculating that somehow the appearance of the rip might have aided it in refuting the testimony as to the appearance of the clothing article in question. As we said:

In certain circumstances, regardless of good or bad faith, the State may lose or destroy material evidence which is "so critical to the defense as to make a criminal trial fundamentally unfair" without it. . . .

Turning to consider the circumstances of Appellant's case, we conclude that the complainant's clothing is not evidence so crucial to the defense that its

destruction will necessarily result in a fundamentally unfair trial. The State carefully identified and described the articles of clothing, and turned over to the Appellant the police evidence report containing these observations. The testimony of Detective Fujinaka and the description of the garments contained in the police evidence report supply no reasonable inference that [the] evidence of the condition of the garments would have favored the defense.

*Id.* at 187–88, 787 P.2d at 6.73.

On the other hand, in this case, we have a conflict in the testimony as to what took place in the taped telephone conversations. The jury was compelled to decide that conflict based on credibility. Had the tapes been available, that would not have been the case. As appellant correctly points out, even the officer who had charge of the tapes admitted their importance.

Q. Well, wouldn't it be a very critical piece of evidence with respect to any claim of entrapment?

A. Now that's a possibility; that's correct.

Tr. 8/29/89 at 80.

In *State v. English*, this court balanced the prejudice to the defendant, arising out of the delay, against the reasonableness of the delay. Here, it is clear that if the tapes had corroborated appellant's version of the telephone conversations, they would have gone a long way toward convincing the jury that he had established his defense of entrapment, and so the delay which caused the destruction of the tapes must be deemed to have been prejudicial.

The judge below made no finding one way or the other on the good faith of the police in the loss of the tapes, so we need not deal with that issue here.

As for the reasonableness of the delay, the trial court's finding 3 as to what caused the pre–indictment delay generally coincides with the evidence. The trial judge's conclusion of law that the

delay was not unreasonable, however, is erroneous. While one year of the delay was attributed to the officer's remaining undercover, and may be reasonable, the remaining 13 or 14 months of the delay, due to malfunctions in the staffing at the Prosecutor's Office, is unreasonable and inexcusable.

Accordingly, applying a balancing test between the prejudice to appellant's defense of entrapment caused by the loss of the tapes due to the delay, and the alleged reasonableness of the delay, we come to the conclusion that with respect to Counts III and IV, appellant's due process rights were violated, and that those convictions must be reversed. Affirmed in part and reversed in part, and remanded for resentencing on the basis of this opinion.

*Jonathan J. Ezer* (*Reginald P. Minn* on the briefs) for appellant.

*James M. Anderson*, Deputy Prosecuting Attorney, for appellee.