**STATE OF HAWAII**, Plaintiff–Appellee, v. **ARWIN R. ECHINEQUE**, Defendant–Appellant

NO. 15310

(CR. NO. 89–1164)

MARCH 25, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY PADGETT, J.

Appellant Arwin R. Echineque (appellant) appeals from a judgment and sentence entered by the First Circuit Court after a jury had found him guilty of assault in the first degree in violation of HRS § 707–710.

Appellant contends that the conviction should be reversed because the trial judge, over objection, employed a method of impaneling the jury which does not comply with the provisions of

HRS § 635–26(a). We agree, vacate the judgment, and remand the case for a new trial. HRS § 635–26 provides as follows:

> **Impaneling.** (a) At the trial of any cause requiring a jury, in any circuit court, the clerk of the court shall draw by lot such jury, to the number of twelve, from the box containing the names of such persons as have been duly summoned to attend as trial jurors, and who are not excused from attendance; and if any of the twelve be challenged and set aside, the clerk shall continue to draw by lot from the box until twelve impartial jurors are obtained, when they shall be sworn as the jurors for the trial of the cause. If so directed by the court, additional jurors shall be drawn and impaneled to sit as alternate jurors.

Prior to the voir dire of the prospective jurors in this case, appellant's counsel objected to the method of jury selection to be implemented by the trial court. He stated:

> MR. THOMPSON: ... This concerns the manner of [impaneling] the jury in this case. My understanding of the Court's procedure is that the Court intends to draw, initially draw, 40 names of the jurors who are here today. And those 40 jurors will constitute the 12 jurors in the box, plus an additional 28 more for the purpose of selecting the jury in this case.
>
> As I understand it, the procedure will be that after the Court's general voir dire, both parties, the prosecution and the defense, will be able to individually voir dire the members of the 40, each juror who's selected within that 40 group.
>
> At the conclusion of — well, during this phase, there would be challenges for cause to each of the jurors. At the conclusion of the challenges for cause, we would then

alternately strike each juror [peremptorily] from within the 12 seated in the box; and juror number 13 would replace the first person who is removed. And everybody, the rest of the 27, then would move up the line.

I would submit to the Court at this point we would object to the procedure as being violative of [HRS §] 635–26 which governs the [impaneling] of the jury. It appears that while there is compliance with the first portion of the statute, that is, the clerk of the court shall draw by lot such jury to the number of 12 from the box containing the names of such persons as have been duly summoned to attend this trial and who are not excused from attendance while that portion has been complied with [sic].

The subsequent portion appears to deviate from the statute in the sense that the statute appears to contemplate a method of striking and replacing jurors at random. In other words, if juror number six is [peremptorily] excused, then a juror would be selected at random from the remaining members of the panel.

. . . .

It's similar to a situation of almost forum shopping; but with respect to the jurors, it looks like juror shopping. That is, I know I excused four. I know who the juror is who's going to replace that juror, and that type of knowledge I don't think was anticipated by the statute.

Tr. 2/11/91 at 2–4.

The court overruled appellant's objection stating that it would continue to follow its intended custom of jury selection. The court outlined this process for the record:

[THE COURT:] Jury selection will commence with the random selection of 40 names from the divisional jury

list. These names will be recorded in the order in which they are drawn. The Court will conduct a general voir dire. And as individual jurors are excused for cause, be it hardship, bias or what have you, they will be replaced by a new 40, this juror whose name will go to the bottom of the list. So that at any given time we are addressing in voir dire 40 jurors. Ultimately, a panel or a group of 40 jurors is passed for cause. If either party has challenged one or more of the 40 for cause but the Court has disallowed the challenge, then we still have the panel of 40.

Obviously, before we reach the point of passing the group of 40 for cause, each counsel will have had an opportunity to engage in or conduct individual voir dire. The Court allows each side 90 minutes for that purpose.

[Peremptories] are generally exercised out of the presence of the jury panel, although if either party wishes, the [peremptories] may be exercised at the bench out of the presence of the jury if that deems [sic] advantageous. It goes more quickly if the jury panel is excused, and the parties know who they wish to challenge [peremptorily].

Any given [peremptory] challenge may only be exercised as to the then first 12 names in order. Any juror so challenged would be replaced by the then 13th name in order, then becoming the 12th. From a statistical point of view, the randomness of the system is identical to what is described in the statute. Were we simply to draw 12 names at random from the outset from a standpoint the 13th name will be the same name as the 13th name we have already drawn at random.

Mr. Thompson is correct under the strike and replace system, we don't know until we hear the name who that 13th person is. Under the struck jury system that the Court follows, we still don't know the 13th name [until]

we hear it; but we've already heard the [name] prior to exercise [peremptory] of challenge.

If every [peremptory] challenge that the parties are entitled to is exercised, we're back into a jury of 12, plus two alternates. The 13th challenge, incidentally, being designated for the alternates may only be exercised with respect to the then 13th and 14th names in order [sic] the people who would be alternates if no further challenges were exercised.

It's the Court's view that the struck jury method that I have described does not violate the letter or the spirit of [HRS §] 635–26 []. *I'm inclined to agree with Mr. Thompson that the legislature probably had the strike and replace system in mind when it originally enacted the precursor to Section 635–26 in 1903, but the Court does not regard that statute as worded as being inconsistent with the use of the struck jury method as I have described it.*

*Id.* at 6–8 (emphasis added). Moreover, in support of the "struck jury" method, the court noted four advantages:

[THE COURT:] . . . First, it eliminates an element of uncertainty. Under the strike and replace system, there is at least one wild card. After each party has exercised its final [peremptory] challenge, it has no choice but to accept the next juror out of the box without knowing who that person is going to be. At least under the present system, you know who that person is going to be.

Secondly, there is a considerable timesaving with respect to the elimination of the need for further general voir dire of jurors after [peremptories] have been exercised inasmuch as all jurors will have been voir dired and

passed for cause before the process of [peremptory] chal-
lenges begins. So there's a substantial timesaving there.

Third, it's not even necessary under the struck jury
method to advise the jury as to the existence of [peremp-
tory] challenges. They don't even have to know that
they're being challenged. . . . They don't have to sit there
and listen to themselves being challenged and asked to be
thanked and excused.

And finally, it may well be that given State v. Batson
and State v. Levinson, in the event of a Batson objection
to a particular [peremptory] challenge, that the struck jury
method may be necessary so that we can avoid the prob-
lem of having to unscramble an egg. Under the struck
jury method, no juror is excused from further service until
the composition of the panel is determined. The panel is
sworn in and is ready and able to proceed with the evi-
dence phase of the trial.

Under the strike and replace system, as jurors are
challenged [peremptorily], they are excused. And in the
event of a Batson objection and in the event that the
Court determines that the [peremptory] was improperly
or unconstitutionally exercised, there's no way to return
that juror to the group, inasmuch as the juror has already
been excused from service. And so it may well be that
the case law that I mention now implicitly mandates a
struck jury system.

*Id.* at 8–10.

It is, of course, the prerogative of the legislature to set forth,
by statute, the methods by which jurors are selected, challenged,
impaneled and seated. Those provisions are found in HRS
Chapters 612 and 635. HRS § 635–26(a), with which we are here
concerned, was, with the exception of the last sentence thereof,

originally enacted as § 12 of Act 38 of the Session Laws of 1903, the first really productive session of the legislature following the adoption of the Organic Act organizing the Territory of Hawaii. The provisions in question here have remained unchanged as a part of Hawaii statutory law for the 89 years that have followed since that enactment.

The statute says, in plain English, that the clerk of the court shall draw by lot 12 names from the box and that if any of the 12 is excused, the clerk shall continue to draw by lot from the box until 12 impartial jurors are obtained. Thus, each replacement juror is to be drawn by lot after a preceding juror is excused.

The method employed by the judge below, over objection, did not comply with that provision. Instead, all 40 names on the panel were drawn before any voir dire was conducted. Then, as each juror was excused for cause, a new name was drawn and placed at the bottom of the list of 40, to move up one notch as each succeeding juror was excused. When the voir dire was finished in this particular case, there remained 38 jurors, 14 seated in the box including 2 alternates, and 24 in the jury room. Then, in the absence of the jury, the peremptory challenges were exercised and as each juror was excused, the next juror in line came into the box in the excused slot, and all of the remaining jurors moved up one notch. There was no drawing by lot to fill the seat made vacant as the jurors were excused.

The method of impaneling a jury employed by the judge below has sometimes been called the "struck jury" method, while the method required by the statute has sometimes been called the "strike and replace jury" method.

The judge below in his remarks and the prosecution in its brief urge that the "struck jury" method of impanelment is superior to the "strike and replace jury" method of impanelment. Appellant, of course, argues the other way. Such arguments should be

addressed to the legislature and not to the courts. Trial judges are not free to disregard the statute and institute their own methods of impaneling juries, no matter how superior they may think their chosen method is.

*State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990), and *State v. Levinson*, 71 Haw. 492, 795 P.2d 845 (1990), do not invalidate HRS § 635–26(a). The prohibition against ethnic and gender biased peremptory challenges can still be complied with using the statutory jury impanelment procedures even though it might be easier to comply with them by using the "struck jury" method.

The State argues that appellant has shown no prejudice as a result of the lower court's refusal to follow the statute. There are two obvious answers to that argument. First, appellant *has* a right to exercise his peremptory challenges, and to have the juror who replaces the challenged juror selected by lot after the challenge as the statute provides, and that right was taken away from him in this case. He was prejudiced in the sense that a right which the statute gave to him was taken away by the judge below. If a trial judge chose to deprive a defendant of all of his peremptory challenges, the defendant would have great difficulty in showing actual prejudice since the jurors would have all been passed for cause, but no court would uphold, as being nonprejudicial, the deprivation of the statutory right to exercise peremptory challenges, even though that right is solely dependent on statute, and not on a constitutional right.

Secondly, to accept the prosecution's position would be to say that each trial judge in this State, in conducting trials, can impanel juries, as he or she will, without following the statute, and defendants can only obtain relief where they establish that, as a result of the impanelment method, a prejudicial juror sat on the case and affected the verdict. The statute, by its express terms applies to *any* cause requiring a jury in *any* circuit court, and that means that

there is *one* method of impaneling a jury to be used in *all* circuit courts and before *all* judges sitting in those courts.

For the reasons expressed above, the judgment below is vacated and the case is remanded for a new trial.

*Seth T. Thompson* for appellant.
*Caroline M. Mee*, Deputy Prosecuting Attorney, for appellee.