880 P.2d 217

STATE of Hawai'i, Plaintiff-Appellee,

v.

Daniel Perry CARVALHO, Jr.,
Defendant-Appellant.

No. 15524.

Intermediate Court of Appeals of Hawai'i.

Sept. 8, 1994.

Certiorari Granted Sept. 29, 1994.

Certiorari Dismissed as Improvidently
Granted May 12, 1995.

Dwight C.H. Lum, on the briefs, Honolulu, for defendant-appellant.

Caroline M. Mee, Deputy Pros. Atty., City & County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and HEEN and ACOBA, JJ.

ACOBA, Judge.

The defendant, Daniel Perry Carvalho, Jr., (hereafter Defendant) was indicted for the offense of Promoting a Dangerous Drug in the First Degree under Hawai'i Revised Statutes (HRS) § 712–1241(1)(b)(ii)(A) (1985). Trial commenced on April 22, 1991. The jury returned a verdict of guilty on April 26, 1991 and Defendant was sentenced to imprisonment for a term of twenty years and restitution in the amount of $620.00. On his appeal from the judgment, Defendant raises several points. We consider two points.

## I.

First, Defendant claims that the motions court erred in denying his pre-trial motion to dismiss for pre-indictment delay (hereafter Motion).

Defendant allegedly sold cocaine to a confidential informant on January 31, 1986. He was indicted on July 27, 1988, thirty months after the date of the alleged offense but within the time allowed under the statute of limitations.

The United States Supreme Court first recognized in *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971), that "the statute of limitations does not fully define the [defendant's] rights" to a fair trial and that "events occurring prior to [the formal criminal charge]" may "cause [ ] substantial prejudice to [such] rights...." Under such circumstances "the Due Process Clause ... would require dismissal of the [criminal charge][.]" *Id.*

After *Marion*, it was made clear that the "due process inquiry must consider the reasons for the delay [in prosecution] as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752, 759 (1977). Thus, we "follow the balancing approach adopted by a substantial number of courts in other jurisdictions" by weighing "substantial prejudice to the defendant's right to a fair trial" against "the reasons for the delay in determining whether dismissal of the criminal charge is required." *State v. English*, 61 Haw. 12, 17 n. 8, 17, 18, 594 P.2d 1069, 1073 n. 8, 1073 (1979).

The hearing on the Motion consisted of stipulations as to testimony. The essence of Defendant's case was that he could not remember "where he was or what he might have done on January 31, 1986," that his mother, family and friends were unable to help him recollect the events of January 31, 1986, that because he could not recollect such

events he would not be able to locate potential alibi witnesses and that he had no floor plans for his residence where the alleged cocaine sale took place.

The State's offer of testimony was that the informant surfaced sometime after July 30, 1987, that the informant was working in an undercover capacity prior to that time and that the police department and the informant did not "purposely delay bringing in this case [to the prosecutor] in order to obtain an unfair advantage."

The State also offered evidence that the prosecutor's office received the case on August 17, 1987 and that the indictment was delayed because of re-assignments within the prosecutor's office, "holidays and administrative days off," a backlog of cases at the grand jury, a planned consolidation with another case, lack of time at the grand jury proceedings, and the illness of the informant. Defendant was not indicted until July 27, 1988, almost a year after the case had been "conferred" with the prosecutor's office.

### A.

■ We do not condone the nearly one year delay in the prosecutor's office. However, we believe the motions court was correct in concluding that Defendant failed to establish that his claimed inability to recollect events prior to his indictment, even with the aid of others, amounted to "substantial prejudice" to his right to a fair trial. Defendant claimed that he could not recollect what occurred on January 31, 1986 but that if he could have, he would have been able to obtain "alibi witnesses" for that date. But it is established in our jurisdiction that "a mere claim of loss of memory coupled with a lapse of time does not, of itself, establish prejudice for purposes of a claim of violation of due process under Article I, Section 5 of the

Hawaii [Hawai'i] State Constitution[,]" *State v. Dunphy,* 71 Haw. 537, 542, 797 P.2d 1312, 1315 (1990), or under the Fourteenth Amendment of the United States Constitution. *See State v. Bryson,* 53 Haw. 652, 500 P.2d 1171 (1972) (evidence of memory loss insufficient in that case to establish prejudice under due process clause of Hawai'i State Constitution and Fifth Amendment of the United States Constitution). *See also State v. Levi,* 67 Haw. 247, 249, 686 P.2d 9, 10 (1984) (memory loss based on a "31 month delay," one month more than the thirty months claimed here, was insufficient to show substantial prejudice); *State v. English,* 61 Haw. 12, 19, 594 P.2d 1069, 1074 (1979) (A "bald assertion of [defendant's] loss of memory" is insufficient to establish "substantial prejudice"). For "the real possibility of prejudice inherent in any extended delay[, i.e.,] that memories will dim[,] . . . [is] not in [itself] enough to demonstrate that [the defendant] cannot receive a fair trial[.]" *United States v. Marion,* 404 U.S. 307, 326, 92 S.Ct. 455, 466, 30 L.Ed.2d 468, 482 (1971).

■ While the evidence submitted at the hearing on the Motion was insufficient to establish prejudice from claimed memory loss, "[e]vents of the trial may demonstrate actual prejudice[.]"[1] *Id.* But prejudice was not demonstrated at trial. Defendant testified that he "didn't engage in [the sale]." He was also able to testify in detail on direct examination about the informant's visit to his home on or about January 31, 1986,[2] the day of the alleged sale, as well as about her visits to his home on the three days following. His testimony at trial does not indicate that the passage of time prejudiced his right to a fair trial. Defendant was clear in his denial of culpability and was able to recount the events of the informant's visits with him during the relevant time period.

---

1. Defendant did not refile or renew his motion to dismiss for pre-indictment delay during or after the trial. The logic of *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), would suggest that this is a necessary step in preserving the issue for appeal if Defendant relies on "trial events" to show prejudice.

2. On direct examination Defendant testified as follows:

■ Defendant also claimed he was prejudiced by the loss of potential alibi witnesses because of the passage of time. However, in a claim of pre-indictment delay, " 'the generalized prospect of ... lost witnesses does not amount to actual prejudice.' " *Millman v. State*, 841 P.2d 190, 196 (Alaska App.1992) (quoting *State v. Mouser*, 806 P.2d 330, 337–38 (Alaska App.1991)). Because "[t]he defendant has not indicated what the unavailable witness'[ ] testimony would have added [he], therefore, has failed to show how he was prejudiced by the lack of that testimony." *State v. Weeks*, 137 N.H. 687, 698, 635 A.2d 439, 446 (1993).

Defendant identified one of the "lost" witnesses. He stated that this witness lived with him "off and on" and Defendant's "last knowledge was that Mr. Sanchez was somewhere in Texas, but no one seems to know [where]." However, he did not know what Mr. Sanchez would have testified to, if anything. Moreover, at the hearing Defendant did not "show[ ] a good faith attempt to locate the witness[ ][,]" a necessary factor in establishing prejudice resulting from a lost witness. *Bryson*, 53 Haw. 652, 657, 500 P.2d 1171, 1174 (1972).

■ Finally, Defendant claimed that he was prejudiced by the destruction of the house where the alleged sale took place.

The house was destroyed by its owners in December 1986, or January 1987. Specifically, defense counsel argued the destruction of the house caused Defendant to lose potential impeachment evidence:

> [I]f someone ... made a statement as to the actual physical layout of the house which was incorrect, [Defendant] has no way ... to present direct evidence to show that statement would be incorrect....
>
> ... [I]f someone testified ... about being able to see certain things from certain vantage points ... [Defendant] has no way of showing by direct evidence that such statement was ... incorrect if it was because the bushes, the trees and plants have all been uprooted and the property cleared.

But, in a claim of pre-indictment delay, "the proof must be definite and not speculative" in order to establish prejudice. *State v. Broughton*, 156 Ariz. 394, 398, 752 P.2d 483, 487 (1988). Defendant's contention that he would need the evidence "if" certain issues were raised was speculative at best. Furthermore, the record does not indicate that Defendant made any attempt to contact the house owner, to obtain the house floor plan, or to locate witnesses who were familiar with the house.

■ Indeed, at trial, no testimony was elicited about the "actual physical layout of the house" from anyone. The officers testified they could not see the informant enter the house or see her actions in the house

> Q. MR. IKENAGA [ (defense counsel) ] Okay. Thank you. Now, coming to January 31st, 1986, do you recall anything unusual happening around that time?
> A. [ (By Defendant) ] Yes, I do.
> Q. What happened? Let's start off. What was sort of unusual?
> A. Well, she came by one night about—it was late anyway, and you know, stayed and talked for awhile. And then she asked me for a plastic bag so I gave her an empty plastic bag.
> Q. When you say "she", you're talking about—
> A. I'm talking about Jodi.
> Q. And she asked for a plastic bag and you gave her a plastic bag?
> A. Yes.

> Q. What kind of bag are we talking about, sandwich plastic bag? trash bag?
> A. It's not a sandwich bag or a trash bag. It's the bigger bag like oh, about that big. (WITNESS INDICATES)
> Q. Would it be about the size of the paper I'm holding?
> A. About the size approximately, maybe a little smaller, but I mean about that size.
> MR. IKENAGA: May the record show that the paper that I'm holding is a standard eight and a half by eleven sheet of paper.
> THE COURT: Yes, the record will so indicate.
> Q. (By Mr. Ikenaga) What happened after you gave her a plastic bag?
> A. She stayed around and talked for awhile and then she left.

from their vantage points. Nor could they recall what vegetation was near the house. Defendant did not testify as to the house "layout" or the location of any vegetation. Since the house "layout" or the location of any vegetation was not disputed at trial, the lack of the house itself or the house plans could not have resulted in any prejudice of a substantial nature to Defendant at his trial.

### B.

Because Defendant failed to establish substantial prejudice to his right to a fair trial, there is no imperative to consider the reasons for prosecutorial delay. *State v. Weeks*, 137 N.H. 687, 698, 635 A.2d 439, 446 (1993); *State v. Krinitt*, 251 Mont. 28, 34, 823 P.2d 848, 851 (1991). However, we believe it helpful to answer Defendant's primary contentions on appeal. From his brief we do not understand Defendant to seriously challenge, in connection with this case, the proposition that a reasonable delay caused by the State's desire to continue an agent's work undercover is justified by "a legitimate state purpose." *State v. Bryson*, 53 Haw. 652, 657, 500 P.2d 1171, 1174 (1972). Additionally, it was not argued that the informant and the police purposely delayed bringing the case to the prosecutor.

Rather, Defendant's primary contention on appeal appears to be that the delay "from the time the case went to the prosecutor's office to the time of indictment" was unreasonable. Defendant's reliance on *State v. Dunphy*, 71 Haw. 537, 797 P.2d 1312 (1990), in support of this proposition, is inapposite. In *Dunphy*, there was a twenty-five-month delay in bringing the indictment, with "13 or 14 months of the delay[ ] due to malfunctions in the staffing at the Prosecutor's Office[.]" *Id.*

at 544, 797 P.2d at 1315. The delay in the prosecutor's office was deemed "unreasonable and inexcusable." *Id.* But the Hawai'i Supreme Court in *Dunphy* only upheld dismissal of those counts affected by "prejudice" caused to the defendant from the loss of police tapes containing conversations between the defendant and an undercover officer. *Id.* Even with the thirteen-month to fourteen-month delay in the prosecutor's office, the court did not dismiss those counts unaffected by the prejudice of lost tapes. Contrastingly, Defendant suffered no prejudice here. Accordingly, we affirm the motion court's order denying Defendant's Motion.

### II.

### A.

The next point we consider is Defendant's claim that plain error was committed under Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) [3] when the trial court afforded the State one more peremptory challenge [4] to the alternate jurors than it afforded Defendant. An alternate juror selected as a result of this procedure replaced one of the jurors on the "regular" panel and became the foreperson of the jury.

The pertinent statute, HRS § 635–29(c) (1985), provides that "[i]f an alternate juror or alternate jurors are to be impaneled, one or more additional peremptory challenges shall be allowed as provided by the rules of court." The relevant rule, HRPP Rule 24(c) (emphasis added) states in part that, "[w]hen the court directs that one or more alternate jurors be impaneled, each defendant *shall be entitled to 1 additional peremptory challenge which may be used to challenge the alternate jurors only* [.]" Correspondingly, "the State

---

**3.** Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**4.** There are two kinds of challenges to jurors: "for cause" and peremptory. "In all cases, any party may challenge for cause any juror drawn for the trial." Hawai'i Revised Statutes (HRS)

§ 635–28 (1985). "For cause" includes challenges to the "juror's qualifications, interest, or bias that would affect the trial of the cause and ... to any matter that might tend to affect the proposed juror's verdict." HRS § 635–27 (1985). A peremptory challenge is "[t]he right to challenge a juror without assigning, or being required to assign, a reason for the challenge." *Black's Law Dictionary* 1136 (6th ed. 1990).

shall be allowed as many [peremptory] challenges as are allowed to all defendants." HRS § 635–30 (1985).

Here, twelve potential jurors had been passed for cause when the court stated that the parties would have "three peremptory challenges apiece to the regular panel" and "an additional challenge that can be used as to the alternate seats." The court did not announce the number of alternate jurors to be chosen. Following each counsel's use of his three peremptory challenges for the "regular" panel, the court requested the "clerk to fill the first alternate seat."

After the prosecutor completed his examination of the first person in the first alternate seat, defense counsel indicated he had no questions. The court then asked the prosecutor if he wished to exercise his peremptory challenge to "alternate number one." The State indicated it would "waive," Defendant exercised his "alternate challenge," and the court excused the first person in the first alternate seat.

MR. CRUTCHFIELD [ (the prosecutor) ]: Thank you. Nothing further, your Honor.

THE COURT: Voir dire by Mr. Ikenaga?

MR. IKENAGA [ (defense counsel) ]: No questions, your Honor.

THE COURT: As to alternate number one, Mr. Prosecutor, does the State wish to exercise a challenge there [sic]?

MR. CRUTCHFIELD: No, your Honor. The State will waive.

THE COURT: Mr. Ikenaga, did the Defendant wish to exercise his alternate challenge as to Mr. Prewitt?

MR. IKENAGA: Yes, your Honor.

THE COURT: You're excused, Mr. Prewitt. Thank you very much.

A second person was called to replace Mr. Prewitt. The prosecutor conducted "voir dire" of the juror and "pass[ed] [the juror] for cause." The defense examined the second person and also "pass[ed] [the juror] for cause." The court then gave the State the opportunity to exercise a second peremptory challenge, which the State used. Thus, the second person in the first alternate seat was excused. The court did not call upon Defendant to exercise any peremptory challenges.

A third person, Mr. David Polhemus, was called to fill the first alternate seat. He was passed "for cause" by both counsel and thus became the first alternate juror. The court did not call for the exercise of any peremptory challenges after Mr. Polhemus was called for the first alternate juror seat.

The court then called a person "to fill alternate seat number two." A juror for the second alternate seat was chosen.

Mr. Polhemus later replaced one of the jurors on the "regular" panel and became the foreperson of the jury.

The State contends that when the prosecutor said, "The State will waive[,]" the prosecutor did not mean what he said, but "was waiving the opportunity to exercise [the peremptory challenge] at that time." We are not aware of, and the State does not refer us to any statute or rule permitting the reservation of a peremptory challenge for future use. We are satisfied from the record that when the court asked "[D]oes the State wish to exercise a challenge there [sic]?" and the prosecutor answered, "No, your Honor. The State will waive[,]" the court was asking the prosecutor to exercise his challenge as to the alternate juror and that the prosecutor understood that to be the court's inquiry.

The court engaged in the same colloquy when it asked defense counsel if "the Defendant wish[ed] to exercise his alternate challenge," Defendant answered in the affirmative, and the court excused the juror. In addition, the court used the same terms when it allowed the State a second peremptory challenge by saying: "Mr. Prosecutor, did you wish to use or exercise the challenge to Mr. Ranne ...?" The prosecutor used the "challenge" and the court excused the juror as it had done when Defendant exercised his challenge.

The procedure used by the court was clearly incorrect. While, generally, the

method of selecting a jury is committed to the court's discretion, the procedure followed here violated the command in HRPP Rule 24(c), that the "defendant shall be entitled to 1 additional peremptory challenge ... to challenge the alternate jurors[.]" The court asked the parties for their first and only peremptory challenge permitted under the rules before all the potential alternates had been passed for challenges as to cause. Defendant having only one challenge and there being more than one alternate, the court was mistaken in calling for the exercise of Defendant's challenge at the point that it did. Only after all potential alternates were passed for cause could Defendant properly exercise his one peremptory challenge as contemplated by HRPP Rule 24(c). The procedure prejudiced Defendant because he was compelled to exhaust his peremptory challenge before all the prospective alternate jurors were passed for cause.

Moreover, once the State waived its challenge it was foreclosed from exercising any more peremptory challenges because the State is only "allowed as many peremptory challenges as are allowed to [the] defendant[ ]." HRS § 635–30; HRPP Rule 24(b). The court's procedure, as a matter of fact, resulted in the State gaining an extra challenge not afforded the defendant, giving it an unfair advantage in selecting the jurors who ultimately decided the case.

■■■ We hold, therefore, that the defendant's right to one peremptory challenge to alternate jurors under HRPP Rule 24(c) is a right pertaining to all the alternate jurors and therefore the defendant shall not be called upon to exercise the challenge until all potential alternate jurors have been examined and passed on challenges for cause. *Cf.*

*United States v. Evans*, 848 F.2d 1352, *modified on other grounds*, 854 F.2d 56 (5th Cir. 1988) (defendant entitled to an additional peremptory challenge where two alternate jurors were impaneled; however, defendant was not prejudiced by the denial of peremptory challenge where alternate jurors were excused prior to deliberations).

### B.

■■■ " '[N]othing in the Constitution of the United States ... requires ... [the States] to grant peremptory challenges.' " *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 772 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)[5] (quoting *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154, 1156 (1919)). But the right to exercise a peremptory challenge "is one of the most important of the rights secured to the accused [in a criminal case]." *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208, 214 (1894).

Peremptory challenges in the United States developed from the English common law. *Swain*, 380 U.S. at 212, 85 S.Ct. at 832, 13 L.Ed.2d at 769. In 1305, "The Ordinance for Inquests, 33 Edw. 1, Stat. 4 (1305), provided that if 'they that sue for the King will challenge any ... Jurors, they shall assign ... a Cause certain.' " *Id.* at 213, 85 S.Ct. at 832, 13 L.Ed.2d at 768. But in practice the parties were given the opportunity to exclude jurors without assigning a cause:

So persistent was the view that a proper jury trial required peremptories on both sides, however, that the statute was construed to allow the prosecution to direct any juror after examination to "stand aside" until the entire panel was gone over and the defendant had exercised his challenges; only if there was a deficiency of

---

**5.** Peremptory challenges are now imbued with considerations underlying federal and state equal protection clauses. *J.E.B. v. Alabama ex rel. T.B.*, —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (exclusion of jurors solely on the basis of gender violates federal equal protection clause); *Batson v. Kentucky*, 476 U.S. 79, 106

S.Ct. 1712, 90 L.Ed.2d 69 (1986) (exclusion of jurors solely on the basis of race violates federal equal protection clause); *State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990) (exclusion of jurors solely on the basis of race violates state equal protection clause); *State v. Levinson*, 71 Haw. 492, 795 P.2d 845 (1990) (exclusion of

jurors in the box at that point did the Crown have to show cause in respect to jurors recalled to make up the required number. Peremptories on both sides became the settled law of England, continuing in the above form until after the separation of the Colonies.

*Id.* (footnotes omitted).

In 1790, the United States Congress provided peremptory challenges to persons charged with treason and with felonies punishable by death. 380 U.S. at 214, 85 S.Ct. at 832, 13 L.Ed.2d at 769 (citing 1 Stat. 119 (1790)). Although there were no comparable statutory provisions for other criminal charges, peremptory challenges were believed to be available to defendants. *Id.* at 214, 85 S.Ct. at 832–33, 13 L.Ed.2d at 769. " 'The right of challenge was a privilege highly esteemed, and anxiously guarded, at the common law.... If, therefore, the act of congress has substituted no other rule ... the common law rule must be pursued.' " *Id.* at 214 n. 13, 85 S.Ct. at 832–33 n. 13, 13 L.Ed.2d at 769 n. 13. (quoting *United States v. Johns,* 4 U.S. (Dall.) 412, 414, 1 L.Ed. 888 (Cir.Ct.Pa.1806)). In 1865, Congress established the right to peremptory challenges for all federal criminal cases.

The development of peremptory challenges in the several states paralleled the federal system. *Swain,* 380 U.S. at 215, 85 S.Ct. at 833, 13 L.Ed.2d at 770. "[B]y 1870, most, if not all, States had enacted statutes conferring on the prosecution a substantial number of peremptory challenges, the number generally being at least half, but often equal to, the number had by the defendant." *Id.* at 216, 85 S.Ct. at 833, 13 L.Ed.2d at 770. Hence, "[t]he persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Id.,* at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772.

▮ Consequently, the United States Supreme Court has held that "[t]he denial or

impairment of the right [of peremptory challenge] is reversible error without a showing of prejudice." *Id.* *Accord Gulf, Colorado and Santa Fe Ry. Co. v. Shane,* 157 U.S. 348, 351, 15 S.Ct. 641, 642, 39 L.Ed. 727, 730 (1895) (violation of statute depriving party of right to peremptorily challenge constitutes reversible error); *Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011, 1014–15 (1892) (mode of jury impanelment impairing right to peremptorily challenge is reversible error). *But see Ross v. Oklahoma,* 487 U.S. 81, 89, 108 S.Ct. 2273, 2279, 101 L.Ed.2d 80, 91, *reh'g denied,* 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988) ("the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides").[6]

This venerable rule has been followed in federal courts. *E.g., United States v. Evans,* 848 F.2d 1352, 1356–57, *modified on other grounds,* 854 F.2d 56 (5th Cir.1988) ("a number of cases have held that reducing the number of peremptory challenges to which a defendant is entitled or otherwise abridging a defendant's right to exercise his peremptory challenges results in an impairment of a substantial right and thus requires reversal"); *United States v. Allsup,* 566 F.2d 68, 71 (9th Cir.1977) ("[i]nhibition of the right to challenge peremptorily ... is usually deemed prejudicial error, without a showing of actual prejudice"); *United States v. Turner,* 558 F.2d 535, 538 (9th Cir.1977) ("error in restricting the exercise of peremptory challenges results in automatic reversal").

State courts have adopted the rule set forth in *Swain. E.g., People v. Juarez,* 158 Mich.App. 66, 72, 404 N.W.2d 222, 225 (1987) (failure "to honor the statutory right of peremptory challenge is error requiring reversal and of serious import"); *People v. Armendariz,* 37 Cal.3d 573, 584, 693 P.2d 243, 249, 209 Cal.Rptr. 664, 670 (1984) ("California courts have consistently held that '[t]he failure to grant a defendant the prescribed number of peremptory challenges ... is revers-

jurors solely on the basis of gender violates state equal protection clause).

6. Peremptory challenges in Hawai'i are provided for under HRS §§ 635–29, 635–30 and HRPP Rule 24(b).

ible error'" (quoting *People v. Shaw*, 237 Cal.App.2d 606, 611, 47 Cal.Rptr. 96 (1965))); *People v. Robinson*, 121 Ill.App.3d 1003, 1011, 460 N.E.2d 392, 398, 77 Ill.Dec. 336, 342 (1984) (" '[t]he denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice'" (quoting *Swain*, 380 U.S. at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772)); *State v. Eisenlord*, 137 Ariz. 385, 392–93, 670 P.2d 1209, 1216–17 (Ariz.App.1983) ("the right to exercise a peremptory challenge is a substantial right" and "denial or impairment of [the] right constitutes reversible error without proof of prejudice").

Similarly, in this jurisdiction a defendant "has a right to exercise his peremptory challenges ... as the statute provides," and "no court would uphold, as being nonprejudicial, the deprivation of the statutory right to exercise peremptory challenges, even though that right is solely dependent on statute, and not on a constitutional right." *State v. Echineque*, 73 Haw. 100, 107, 828 P.2d 276, 279 (1992) (emphasis omitted). *See also State v. Pokini*, 55 Haw. 640, 662, 526 P.2d 94, 111 (1974) (Menor, J., concurring) ("[t]he denial or impairment of the right [of peremptory challenge] is reversible error without a showing of prejudice." (quoting *Swain*, 380 U.S. at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772)).

We hold, therefore, that the denial or impairment of a defendant's right of peremptory challenge in a criminal case is reversible error not requiring a showing of prejudice. We believe that the historical underpinning of peremptory challenges and substantial authority support the adoption of this rule.

Error was committed in the selection of alternate jurors. The error impaired Defendant's substantial right to exercise his peremptory challenge as to all potential alternate jurors and to exercise the challenge to the same extent as the prosecutor.

■■ Defense counsel did not object to the court's improper procedure. However, un-

der HRPP Rule 52(b), appellate courts, in the public interest, may on their own motion, notice errors to which no exception has been taken if the errors are obvious, and if the errors otherwise " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *State v. Fox*, 70 Haw. 46, 56, 760 P.2d 670, 675–76 (1988) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936)). Here, the error was, at the least, obvious, and it affected the fairness and integrity of the jury selection process. That plain error requires reversal.

### III.

Having concluded that reversal is required, it is unnecessary to reach Defendant's additional points contending that the verdict was against the weight of the evidence and that Defendant was denied effective assistance of trial counsel. We note that on appeal Defendant has retained new counsel.

### IV.

The judgment of conviction is vacated and the case remanded for a new trial.