## STATE OF HAWAII, Plaintiff-Appellant, *v.* WALTER T. O. L. SOLOMON, Defendant-Appellee

### NO. 6225

JUNE 28, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICES MARUMOTO AND KOBAYASHI
ASSIGNED BY REASON OF VACANCIES

128

OPINION OF THE COURT BY OGATA, J.

The question on appeal is whether HRS §§ 701-109(2)[1] and 701-111(1)(b)[2] bar the State from proceeding against defendant-appellee Walter T. O. L. Solomon for a violation of HRS § 708-831 (first degree theft), because he had already pleaded guilty to a violation of HRS § 708-832 (second degree theft), both charges arising from the thefts of the same items from the same place occurring over a period of time. The trial court granted Solomon's motion to dismiss the indictment for first degree theft and the State appeals from the granting of the motion. We reverse.

---

[1] HRS § 701-109(2) reads as follows:

(2) Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

[2] HRS § 701-111(1)(b) reads as follows:

§ 701-111 *When prosecution is barred by former prosecution for a different offense.* Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:

(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701-110(3) and the subsequent prosecution is for:

(b) Any offense of which the defendant could have been convicted on the first prosecution or".

The facts of the case are relatively simple and uncontroverted. On October 30, 1975, Solomon confessed to the theft of two cases of copper fittings from the Phelps Dodge Company, was charged with theft in the second degree and released on bail to appear at District Court the next day. At the time Solomon was charged with second degree theft, police officers investigating the case were informed by Phelps Dodge Company that 24 cases of copper fittings were missing, and that each case was valued at $84 wholesale and $150 retail. On the morning of October 31, 1975, at 8:30 a.m., Detective Gomes (Gomes) contacted Deputy Prosecutor Lawrence Grean (Grean) and according to the record, "apprised [him] of the circumstances." Grean recommended that Solomon be charged for theft in the first degree. Subsequently, on the same day, when Gomes checked with District Court, he discovered that Solomon had pleaded guilty to the charge of theft in the second degree. Later that afternoon, Gomes interviewed Solomon who admitted taking all 24 cases of copper fittings. On January 28, 1976, Solomon was indicted for theft in the first degree. The trial court relied on HPC §§ 109(2) and 111(1)(b) (now found in HRS §§ 701-109(2) and 701-111(1)(b) ) in granting Solomon's motion to dismiss the indictment and stated in its order that "[d]efendant having pleaded to a lesser offense and the Government having been aware at the time of facts sufficient to support the greater offense, the Government is now foreclosed from proceeding in this case."

I.

Under HRS § 701-111(1)(b) a prosecution for a violation of a different statutory provision is barred by a former prosecution if the former prosecution resulted in a conviction and the subsequent prosecution is for an offense for which the defendant should have been tried on the first prosecution under § 701-109(2). A guilty plea accepted by the court is considered a "conviction." HRS § 701-110(3). HRS § 701-111 must be read in conjunction with HRS § 701-109(2) which requires joinder of trials of "multiple offenses based on the same conduct or

arising from the same episode.'' *State v. Aiu,* 59 Haw. 92, 576 P.2d 1044 (1978); Commentary on HRS § 701-111. Under HRS § 701-109(2), a defendant cannot be subjected to separate trials for multiple offenses based on the same conduct or arising from the same episode if such offenses are known to the appropriate prosecuting officer at the time of commencement of the first trial and are within the jurisdiction of a single court. *State v. Aiu, supra.* On appeal, the State argues that the trial court erred in dismissing the indictment because the prosecuting attorney's office was not aware of facts sufficient to support the greater offense of theft in the first degree at the time Solomon pleaded guilty to the lesser offense of theft in the second degree; and that the term "prosecuting officer" means prosecuting attorney and does not include police officers. Solomon's contention is that "prosecuting officer" includes police officers and that since Gomes, as a "prosecuting officer," had sufficient facts to warrant a prosecution for first degree theft at the time Solomon pleaded guilty to second degree theft, the multiple offenses were known to an "appropriate prosecuting officer." Thus the issues are (1) whether "prosecuting officer" includes a police officer as well as a prosecuting attorney and (2) whether a prosecuting officer knew or should have reasonably known that more than one offense had been committed at the time of the commencement of Solomon's first trial.

## II.

Police officers are not "prosecuting officers" within the meaning of HRS 701-109(2). An Illinois appellate court has held that "proper prosecuting officer", as used in a statute similar to HRS § 701-109(2), does not include police officers. In *People v. Pohl,* 47 Ill. App. 2d 232, 197 N.E. 2d 759 (1964), the defendant entered a plea of guilty to the offense of driving without a valid driver's license and was assessed a fine which he paid. Prior to the entry of the guilty plea, the defendant advised the court that his driver's license had been previously

revoked. The State's Attorney thereafter filed an information charging defendant with driving a motor vehicle when his license was revoked. Defendant was convicted and sentenced. On appeal, he argued that his disclosure of the revocation of his license to a state police officer was knowledge to a "proper prosecuting officer" within the meaning of the relevant statute. The court concluded that the term "proper prosecuting officer" referred to the state's attorney and his assistants and not to state police officers. *See also People v. Bressette*, 124 Ill.App.2d 469, 259 N.E.2d 592 (1970).

Such an interpretation of "prosecuting officer" is consistent with the dictionary definition of "prosecutor." Thus, Webster's Third New International Dictionary defines "prosecutor" as "a person who institutes an official prosecution before a court often by appearing as the chief witness before a grand or petit jury or before a magistrate." However, a "Police officer" is defined in Black's Law Dictionary as "[o]ne of the staff of men employed in cities and towns to enforce the municipal police, *i.e.*, the laws and ordinances for preserving the peace and good order of the community." Clearly, a police officer does not, nor is he authorized to, perform the function of a "prosecutor."

Solomon points to the language change by the drafters of the Model Penal Code as indicating an intent to include police officers within the meaning of the term "appropriate prosecuting officer." The Model Penal Code, Tentative Draft No. 5, § 1.08(2) used the phrase, "proper officer of the police or prosecution." Section 1.08(2) was subsequently renumbered to § 1.07(2) and amended in part in the Proposed Official Draft which used the phrase "appropriate prosecuting officer." HRS § 701-109(2) substantially adopts the language in § 1.07(2). Solomon contends that the language change was merely to simplify and reduce the verbiage and that "appropriate prosecuting officer" incorporates the former reference to police officers. We are unpersuaded. The use of the disjunctive in the Tentative Draft No. 5 indicates a distinction between police officers and prosecuting attorneys and the deletion of the reference to police indicates an intention to limit this section to prosecuting attorneys.

### III.

The next question is whether the multiple offenses of first and second degree theft were known or should have been reasonably known to the appropriate prosecuting officer. The wrinkle in this case is that although it is apparent that the prosecutor in charge of the second degree theft charge was reasonably unaware of the facts necessary to charge Solomon with first degree theft, a deputy prosecutor not involved in that proceeding was contacted at 8:30 a.m. on the morning of Solomon's district court trial and "apprised of the circumstances." The record does not indicate whether or not the deputy prosecutor was informed of the district court proceedings but it is clear that he knew of the facts necessary for a first degree theft violation. Proceedings at District Court commence at 8:30 a.m. and Solomon's case was the twenty-second to be heard that morning. Thus, at the time of Solomon's trial, a prosecutor knew of the facts necessary for a first degree theft charge. However, to impute knowledge of the facts necessary to support a first degree theft charge to the prosecutor in charge of the second degree theft proceeding would require reasonable time depending upon the circumstances. This is not a situation in which a prosecutor received timely notice of the additional facts and circumstances concerning the additional offense of first degree theft; nor can we say that, given the information that Solomon admitted stealing two cases of copper fittings, the prosecutor in charge of the second degree theft proceeding should have thought it his duty to charge the additional crime of first degree theft. The prosecutorial knowledge requirement is met if the prosecutor in the district court proceeding knew that more than one charge was pending and failed to take the steps necessary to join the charges. An example of prosecutorial knowledge is illustrated in *State v. Aiu, supra,* in which defendant was arrested for the Unauthorized Control of Propelled Vehicle and was cited for Careless or Heedless Operation of Vehicle and Driving Without a License. He was then indicted for the Unauthorized Control of Propelled Vehicle and at arraignment, entered a plea of not guilty. Later defen-

dant was arraigned in District Court on the two misdemeanor charges and found guilty after a bench trial. Prior to the trial, the prosecutor was advised by defendant's counsel that there were three charges, one a felony charge, pending against the defendant as a result of one incident. However, the prosecutor proceeded in district court with the trial on the misdemeanor charges despite the warning that there could be a subsequent bar to the prosecution of the felony charge under HRS § 701-109(2).

The issue of whether a prosecuting officer knew of an additional charge arising out of the same act or course of conduct was faced by the court in *In re Dennis B.*, 18 Cal.3d 687, 557 P.2d 514, 135 Cal.Rptr. 82 (1976). In that case a minor, while attempting to change lanes on a highway, collided with a motorcycle, causing fatal injuries to the cyclist. The minor was first tried in municipal court on a traffic charge of making an unsafe lane change and fined $10. Three weeks later, a petition was filed in the juvenile court charging the minor with the offense of vehicular manslaughter. The minor contended that Penal Code section 654[3] was applicable to preclude his prosecution for manslaughter. The court first stated that "[p]reliminarily, we recognize that one act, the unsafe lane change, did result in two offenses here, and this circumstance was susceptible of discovery in time to avoid multiplicity problems: since the cyclist died before either trial began, the prosecution could have filed manslaughter charges and either joined the two offenses or dismissed the lesser." The court held, however, that the proscription against successive prosecutions set forth in section 654 was not applicable because the circumstances were not such that the prosecution was either aware of or should have been aware of the fact that more than one offense had been committed. First of all, there was no evidence that a particular

---

[3] Section 654 of the Penal Code states in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

prosecutor actually knew of both offenses in time to prevent a multiplicity of proceedings. The court observed that actual knowledge of more than one offense applies only to intentional harassment, *i.e.*, to cases in which a particular prosecutor has timely knowledge of two offenses but allows the multiple prosecution to proceed. Second, in determining that the prosecution was reasonably unaware of more than one offense, the court pointed out that section 654 was designed to prevent harassment and save litigation costs and reasoned that where the original charge is a minor traffic violation and the second charge a felony or serious misdemeanor, the anxiety caused would be the result of the latter charge and not from the multiple proceedings. In balancing the minimal potential for harassment and the State's interest in preserving the summary nature of traffic proceedings the court held that the statute was no bar to the manslaughter proceeding.

HRS § 701-109(2) sets forth a public policy against successive prosecutions for the same course of conduct. It is not intended to enable a defendant who gets to the courthouse faster than the prosecution to thereby eliminate a charge, or to allow a defendant to take advantage of the fact that he has successfully concealed part of his criminal activity from the prosecuting officers. This is not a case of a prosecutor harassing a defendant with multiple prosecution for closely related offenses because of dissatisfaction with the punishment previously meted out or because of previous failure to convict. We do not, of course, by our holding in this case, preclude a case in which a prosecutor's denial of knowledge of an additional closely related offense may not be accepted where the evidence in the record fairly points to a contrary conclusion.

Reversed and remanded for further proceedings not inconsistent with this opinion.

*Paul H. Toyozaki*, Deputy Prosecuting Attorney, on the brief, for Plaintiff-Appellant.

*Dennis Y. S. Chu and Ronald M. Yonemoto*, Deputy Public Defenders, on the brief, for Defendant-Appellee.