74 P.3d 6

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Brandi HIGA, Defendant–Appellee.**

No. 23262.

Supreme Court of Hawai'i.

· July 29, 2003.

Reconsideration Denied Sept. 17, 2003.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

Linda C.R. Jameson, Deputy Public Defender, on the briefs, for defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, JJ., and Circuit Judge Alm, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellant the State of Hawai'i [hereinafter, "the prosecution"] appeals from the March 3, 2000 order of the circuit court of the first circuit, the Honorable Victoria S. Marks presiding, dismissing an indictment against Brandi Higa charging: (1) one count of theft in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (1993) [1] (Count I); (2) one count of

---

1. HRS § 708–831(1)(b) provides in relevant part that "[a] person commits the offense of theft in    the second degree if the person commits theft ...

**184**

promoting a dangerous drug in the third degree, in violation of HRS § 712–1243 (1993)[2] (Count II); and (3) one count of unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a) (1993)[3] (Count III). On appeal, the prosecution argues that the circuit court: (1) misapplied the standard used to determine whether charges should be dismissed for preindictment delay; (2) erred by ruling that actual substantial prejudice includes lost opportunities for concurrent sentencing, parole, and loss of parental rights; and (3) erred by ruling that the balancing of actual substantial prejudice against the reasons for the delay warranted dismissal. The prosecution's first argument is without merit, as there is no evidence that the circuit court misapplied the standard by reviewing the prosecution's reasons for the preindictment delay prior to requiring a showing of actual substantial prejudice or required a showing of lesser prejudice. Nonetheless, the circuit court erred by ruling that lost opportunities for concurrent sentencing, parole, and loss of parental rights constituted actual substantial prejudice to Higa's due process right to a fair trial, inasmuch as these alleged injuries did not affect Higa's ability to present an effective defense. As Higa failed to show actual substantial prejudice, the prosecution's third argument need not be addressed. Based on the foregoing, the circuit court's order is reversed and this case is remanded for further proceedings.

## I. BACKGROUND

On March 11, 1998, Higa was arrested for shoplifting from Liberty House, with a subsequent search revealing drugs and drug paraphernalia. In April 1998, a decision was made by deputy prosecuting attorney (DPA) DeAnn Afualo to prosecute only the theft charge in Count I. From April to October 1998, a period during which the prosecutor's office had over 300 cases to review, it appears that no work had been done on Higa's case. On October 5, 1998, Higa's case was assigned to a paralegal for review.

Meanwhile, on October 29, 1998, Higa was indicted in Cr. No. 98–2226 on entirely unrelated charges. In November 1998, Higa attempted, without success, to have the charges in the present case prosecuted via complaint (PVC) because of her desire to eventually consolidate both cases for purposes of sentencing.[4]

On November 9, 1998, the paralegal assigned to review the case by the prosecutor's office concluded that the evidence of drugs and drug paraphernalia was admissible and submitted this conclusion for review by a deputy prosecuting attorney. Seven days later, after reviewing the paralegal's conclusions, DPA Armina Ching contacted the Honolulu Police Department (HPD) in an attempt to obtain the results of the tests completed on the drug evidence. The HPD reports received by DPA Ching from this request, however, apparently did not contain a chemical analysis of the drug evidence. On December 7, 1998, DPA Ching contacted HPD to request that the drug evidence be sent to a chemist for analysis.

On December 8, 1998, Higa again attempted to PVC the case by faxing a letter to DPA Ching. DPA Ching informed Higa that she was awaiting the follow-up reports from HPD. On December 14, 1998, January 25, 1999, and March 4, 1999, HPD was contacted

[o]f property or services the value of which exceeds $300[.]"

2. HRS § 712–1243 provides in relevant part that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

3. HRS § 329–43.5(a) provides in relevant part:
   (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack,

store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. . . .

4. Higa's attempts allegedly consisted of sending a letter to the prosecution. This letter was dated September 9, 1998. Higa did not allege that the letter was sent in September, but alleged that attempts were made to send the letter in November. The prosecution denied receiving this letter until December 8, 1998 when it was received via fax.

and attempts were made to obtain the pending HPD analysis results. Meanwhile, Higa pled no contest to the unrelated charges in Cr. No. 98–2226, and on March 1, 1999, was sentenced to "an open 5 year jail term" and received a mandatory minimum jail term of thirty days. On March 22, 1999, the results of the HPD analysis were received. DPA Ching sent a letter to Higa, with PVC papers attached, regarding a possible waiver of indictment. Getting no response, DPA Ching contacted Higa on May 5 and 6, 1999, and learned that Higa had not received the letter or PVC papers. DPA Ching offered again to PVC the case.

On May 13, 1999, Higa expressed interest in PVC and proposed a possible plea agreement, but was informed that DPA Ching did not have the authority to enter into plea agreements and would thus proceed by way of grand jury. In preparing the case for grand jury action, DPA Ching noticed that the HPD reports were still incomplete.[5] DPA Ching contacted HPD and requested a rush on the HPD written report. On May 19, 1999, the HPD written report was received and the case was submitted for grand jury action.

Grand jury proceedings were scheduled for June 29, 1999. Due to rush cases requested by the Attorney General, Higa's grand jury proceedings were cancelled and re-scheduled twice. On August 3, 1999, grand jury proceedings commenced and Higa was charged with Counts I–III.

■ Higa filed a motion to dismiss for preindictment delay, asserting a violation of her constitutional right to due process.[6] On March 3, 2000, after two hearings, the circuit court issued the following relevant findings that are challenged by the prosecution:

3. The total length of delay from the alleged offenses to the filing of the Indictment amounts to a period of approximately 1 year, 3 months, and 23 days.

4. The State has failed to present an adequate reason justifying the length of the delay in obtaining the Indictment in this case.

. . . .

23. On or about April 2, 1998, Detective Daniel Paperd met with Deputy Prosecuting Attorney, D. Afualo, and was advised to, ". .[sic] close the case prosecution declined."

24. There is no indication on the police report where further work or evidence was gathered beyond the date of March 12, 1998.

25. The lab work on the alleged substances found on the Defendant was not done until approximately May 17, 1999, and the lab request was sent in by Detective Jack Snyder on or about March 15, 1999.

26. There was no legitimate explanation as to why the lab request was not done until over one year after the alleged incident.

27. The Defendant in good faith attempted to resolve this matter along with Cr. No. 98–2226 before she changed her plea and again before she was sentenced on Cr. No. 98–2226.

28. There seems to be no good cause as to why [sic] the reason for the delay.

29. Now the Defendant is serving an open 5 year jail term.

30. The Defendant has already seen the Hawaii Paroling Authority and they have already set a minimum term for her sentence.

31. The Defendant also has worked with the Child Protective Services for a plan to reunite with her children, and if there is a delay in that plan, be-

---

5. According to the prosecution, while the analysis had been completed, the results had not been set forth in a written report. The circuit court, however, found that the lab work was not done until May 17, 1999.

6. Higa asserted this right under article I, sections 5, 8, and 14 of the Hawai'i Constitution and the fifth and fourteenth amendments to the Unit-

ed States Constitution. "Whether Defendant relies upon a federal or state due process claim does not significantly alter our analysis because our view of preindictment delay as an aspect of the right of due process is substantially similar to that applied under the United States Constitution." *State v. Crail*, 97 Hawai'i 170, 173 n. 4, 35 P.3d 197, 200 n. 4 (2001) (citation omitted).

cause of the above entitled case, the Defendant may loose [sic] custody of her children, and permanently loose [sic] parental rights to her children.

32. Defendant is set to be released on or about April 2000 in Cr. No. 98–2226.

33. In this case, there is not a mere speculation of prejudice to the defendant because of the unexcusable delay on the part of the State, but showing of actual prejudice to the Defendant.

34. The Defendant's status of medium security from low security has changed since the indictment of the above entitled case.

35. The Defendant is no longer in "community" status, meaning that she cannot furlough out to the community for work, or any type of treatment programs.

36. If not for the above entitled case, the Defendant would have in all probability referred to [sic] T.J. Mahoney transition housing sometime in January 2000.

The circuit court issued the following relevant conclusions of law that are challenged by the prosecution:

1. The delay caused by the State has resulted in actual prejudice to the Defendant.

2. If there was no delay by the State, then this case would have been resolved at the same time at [sic] Cr. No. 98–2226.

3. The delay caused actual substantial prejudice by changing the Defendant's classification at the Women's Community Correctional Center when the above entitled case was filed.

4. The delay caused actual substantial prejudice by changing the Defendant's potential release date.

5. The delay caused actual substantial prejudice by affecting other legal proceedings affecting the Defendant, such as release out to furlough to TJ Mahoney on the targeted date of January 2000.

6. The delay caused actual prejudice by affecting her status with Child Pro-

tective Services and thus may cause her to loose [sic] parental rights to her children without any fault of the Defendant in regards to the delay, by having the Defendant's status at the facility change. Therefore, the Defendant not being able to attend certain treatment programs, classes as set forth by her Child Protective Services Treatment Plan. [sic]

7. The prejudice resulted from delay caused by the State.

. . . .

11. In *Smith v. Hooey*, 393 U.S. 374, 377–378, 89 S.Ct. 575, 576–577, 21 L.Ed.2d 607 (1969), the court illustrating prejudice to the Defendant regarding undue and oppressive incarceration, the Supreme Court stated [sic]: "First, the possibility that the Defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." (*Id.* at p. 378, 89 S.Ct. at p. 577).

12. The lost opportunity to receive concurrent time has been found as actual prejudice in the case of *People v. Martinez*, 37 Cal.App.4th 1589, 44 Cal.Rptr.2d 673 (1995). After taking judicial notice of the records and files, reviewing the motions and memorandums filed in this case, considering all arguments and evidence, the Court finds under the totality of circumstances that the Defendant has suffered undue actual substantial prejudice.

The circuit court thus granted Higa's motion to dismiss. This appeal followed.

## II. STANDARD OF REVIEW

### A. Preindictment Delay

■ In reviewing a constitutional due process claim of prejudice engendered by preindictment delay, "the 'due process inquiry must consider the reasons for the delay in prosecution as well as the prejudice to the accused.'" Therefore, a balancing approach is applied, weighing the

"substantial prejudice to the defendant's right to a fair trial" against "the reasons for the delay[.]"

*State v. Crail,* 97 Hawai'i 170, 178, 35 P.3d 197, 205 (2001) (citations omitted).

## B. Pretrial Ruling

We review a circuit court's findings of fact in a pretrial ruling according to the following standard:

Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations and internal quotation marks omitted). "The circuit court's conclusions of law are reviewed under the right/wrong standard." *State v. Pattioay,* 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995) (citation omitted).

*State v. Wilson,* 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999). *State v. Harada,* 98 Hawai'i 18, 22, 41 P.3d 174, 178 (2002).

*State v. Locquiao,* 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002).

## III. DISCUSSION

### A. The circuit court did not misapply the relevant standard regarding preindictment delay, as there is no evidence that it reviewed reasons for the delay prior to requiring a showing of actual substantial prejudice or that it applied a lesser standard of prejudice.

The prosecution argues that the circuit court misapplied the standard used to determine whether charges should be dismissed for preindictment delay. To support its argument, the prosecution alleges that the circuit court (1) did not require a showing of actual substantial prejudice prior to reviewing the reasons for the delay, and (2) referred, on four occasions, to the burden to

show actual substantial prejudice as only "prejudice" or "actual prejudice." The prosecution's arguments are without merit.

When a defendant alleges a violation of due process based on a preindictment delay, the court must employ a balancing test, considering actual substantial prejudice to the defendant against the reasons asserted for the delay. *See Crail,* 97 Hawai'i at 178–79, 35 P.3d at 205–06; *State v. Levi,* 67 Haw. 247, 249, 686 P.2d 9, 10–11 (1984); *State v. English,* 61 Haw. 12, 17–18, 594 P.2d 1069, 1073–74 (1978). Although the court ultimately weighs these considerations, it is the defendant's burden to initially establish that he or she has suffered actual substantial prejudice resulting from the delay. *See State v. Faufata,* 101 Hawai'i 256, 266, 66 P.3d 785, 795 (App.2003) ("[I]f and when the defendant satisfies his or her burden of proving substantial prejudice to his or her right to a fair trial, the reason(s) for the prosecutorial delay is (are) then decided[.]") (Citations omitted.). This has been held a heavy burden for the defendant, inasmuch as not just any prejudice will suffice. *See United States v. Gregory,* 322 F.3d 1157, 1165 (9th Cir.2003) (noting that the defendant's burden to prove actual non-speculative prejudice was a heavy one). If a defendant fails to show actual substantial prejudice, the inquiry ends and the reasons for the delay need not be addressed. *See Crail,* 97 Hawai'i at 180, 35 P.3d at 207; *State v. Carvalho,* 79 Hawai'i 165, 170, 880 P.2d 217, 222 (App.1994).

In this case, there is no evidence that the circuit court did not require a showing of actual substantial prejudice prior to addressing the reasons for the delay. In determining the motion, the court had before it both the alleged prejudice and the alleged reasons for the delay. Relevantly, the circuit court's conclusions of law provided:

3. The delay caused *actual substantial prejudice* by changing the Defendant's classification at the Women's Community Correctional Center when the above entitled case was filed.

4. The delay caused *actual substantial prejudice* by changing the Defendant's potential release date.

5. The delay caused *actual substantial prejudice* by affecting other legal proceedings affecting the Defendant, such as release out to furlough to TJ Mahoney on the targeted date of January 2000.

6. The delay caused actual prejudice by affecting her status with Child Protective Services and thus may cause her to loose [sic] parental rights to her children without any fault of the Defendant in regards to the delay, by having the Defendant's status at the facility change. Therefore, the Defendant not being able to attend certain treatment programs, classes as set forth by her Child Protective Services Treatment Plan. [sic]

7. The prejudice resulted from delay caused by the State.

(Emphases added.) There is nothing in the transcripts of the hearing on this motion that indicates the court looked first to the reasons asserted by the prosecution for the delay.

Additionally, there is nothing in the record reflecting that the circuit court required a lesser showing than actual, substantial prejudice. When read in context of the entire order, it is inconsequential that the circuit court, on a few occasions, mentioned "prejudice" or "actual prejudice," inasmuch as the court clearly required a showing of "actual substantial prejudice." Transcripts also do not reveal the imposition of a lesser standard of prejudice. As there is no evidence that the circuit court either reviewed reasons for the delay prior to requiring a showing of actual substantial prejudice or required a showing of something less than actual substantial prejudice, we hold that the circuit court did not misapply the correct standard.

**B. The circuit court erred by ruling that lost opportunities for concurrent sentencing, parole, and loss of parental rights constituted actual substantial prejudice.**

■ The prosecution argues that the circuit court erred by ruling that lost opportunities for concurrent sentencing, parole, and loss of parental rights constituted actual substantial prejudice to Higa's due process right to a fair trial. More specifically, the prosecu-

tion challenges the circuit court's conclusions of law in which the circuit court cited to *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and *People v. Martinez*, 37 Cal.App.4th 1589, 44 Cal.Rptr.2d 673 (1995). Inasmuch as *Smith* and *Martinez* involved the right to speedy trial, which attaches upon indictment or accusation and involves slightly different considerations, these cases are inapposite. In the context of due process, lost opportunities for concurrent sentencing, parole, and loss of parental rights, as asserted in this case, did not affect Higa's ability to present an effective defense. Accordingly, the circuit court erred by ruling that Higa met her burden of showing actual substantial prejudice.

This court has adopted the balancing approach that evolved from *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). *See English*, 61 Haw. at 18, 594 P.2d at 1073; *State v. Bryson*, 53 Haw. 652, 656–57, 500 P.2d 1171, 1174 (1972). Although *Marion* and *Lovasco* declined to define the precise circumstances in which preindictment delay would require the dismissal of charges, both contemplated a due process claim to include challenges to a defendant's ability to present a defense. *See Marion*, 404 U.S. at 320, 324, 92 S.Ct. 455 (recognizing that preindictment delay could "impair a defendant's ability to present an effective defense" and could result in "[a]ctual prejudice to the defense of a criminal case"); *Lovasco*, 431 U.S. at 785, 97 S.Ct. 2044 ("To establish prejudice to the defense, respondent testified that he had lost the testimony of two material witnesses due to the delay.").

This jurisdiction has similarly required a showing of actual substantial prejudice to a defendant's right to a fair trial when challenging a preindictment delay on due process grounds. *See Crail*, 97 Hawai'i at 178, 35 P.3d at 205 ("[A] balancing approach is applied, weighing the 'substantial prejudice to the defendant's *right to a fair trial*' against 'the reasons for the delay[.]'") (Emphasis added.) (Citations omitted.). In the context of due process, this jurisdiction has addressed the loss of memory, *see Levi*, 67 Haw. at 249, 686 P.2d at 10; *Bryson*, 53

Haw. at 657, 500 P.2d at 1174, the absence of tape recordings that may exculpate the defendant, *see State v. Dunphy,* 71 Haw. 537, 542, 797 P.2d 1312, 1315 (1990), the loss of the ability to gather and present witness testimony, *see Crail,* 97 Hawai'i at 179, 35 P.3d at 206; *Faufata,* 101 Hawai'i at 266, 66 P.3d at 795, and the loss of evidence and exhibits, *see Carvalho,* 79 Hawai'i at 167–69, 880 P.2d at 220–21, all of which affect the presentation of a defense.

Conversely, other jurisdictions have held that the effect that preindictment delay may have on an eventual sentence does not affect a defendant's ability to present an effective defense. Accordingly, these jurisdictions have held that increased sentences, sentences that prolong the date of release from prison, and lost opportunities for concurrent sentencing do not affect a defendant's ability to present an effective defense, and therefore, do not constitute actual prejudice under a due process preindictment delay claim. *See United States v. Brockman,* 183 F.3d 891, 895–96 (8th Cir.1999) (holding that an increased sentence did not constitute prejudice where it was unclear whether due process protections, *i.e.,* protections against "prejudice to a defendant 'in the presentation of his case,'" were intended to include prejudice in sentencing matters); *United States v. Luguis,* 166 F.Supp.2d 776, 780 (S.D.N.Y.2001) (holding that the defendant failed to show substantial prejudice where he failed to prove that a lost opportunity to serve part of his sentence concurrently with a sentence imposed in an unrelated case "affected his ability to present his defense").

Similarly, other post-conviction matters, such as lost opportunities for parole and changes in sentencing that indirectly have an impact on parental rights, do not affect the presentation of a defense. These types of post-conviction matters do not affect the gathering and presentation of evidence, witness testimony, or exhibits. Defenses that may be asserted by the defendant at trial are also not affected. We, therefore, hold that lost opportunities for concurrent sentencing, parole, and loss of parental rights, as asserted herein, do not affect a defendant's ability to present an effective defense, and thus, do not constitute actual substantial prejudice to a defendant's due process right to a fair trial.

In this case, Higa alleged that, due to the preindictment delay, (1) she lost the opportunity to serve any sentence imposed in this case concurrently with that in the unrelated case, (2) the new indictment changed her prison status, affecting the possibility of parole or furlough, and (3) her release date changed, affecting Child Protective Services proceedings in which her parental rights may be terminated. All of these allegations are post-conviction matters that would not affect Higa's ability to present an effective defense, thereby impacting her right to a fair trial, and she has therefore failed to meet her burden of proving actual substantial prejudice by virtue of the preindictment delay.

## IV. CONCLUSION

Based on the foregoing, the circuit court's order dismissing the indictment of Brandi Higa is reversed and the case remanded for further proceedings.