95 P.3d 605

**STATE of Hawai'i, Plaintiff–Appellee**

v.

**Christopher KELIIHELEUA,
Defendant–Appellant.**

No. 26075.

Supreme Court of Hawai'i.

Aug. 5, 2004.

As Corrected Aug. 16, 2004.

Daisy Lynn B. Hartsfield, Deputy Public Defender, for defendant-appellant.

Mark Yuen, Deputy Prosecuting Attorney, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold, in this appeal by Defendant–Appellant Christopher Keliiheleua (Defendant) in Cr. No. 02–1–2062, from an April 14, 2003 order of the circuit court of the first circuit [1] (the court), that the court did not err in denying Defendant's motion to dismiss the charge of negligent injury in the first degree, Hawai‘i Revised Statutes (HRS) § 707–705 (1993),[2] for preindictment delay (motion to dismiss). We so hold because Defendant's claimed "lost ... opportunity to consolidate" Cr. No. 02–1–2062 with Cr. No. 01–1–2131, a related case of insurance fraud and theft (fraud case), "for [the purpose of] mov[ing] for ... deferral [of acceptance of pleas] ... in both cases" allegedly resulting from prosecutorial delay does not implicate a defense or the ability to present a defense at a trial on the offense charged.

We also hold that, contrary to Defendant's contention, HRS §§ 701–109(2) (1993) and 701–111(1)(b) (1993) do not require dismissal of the negligent injury case for failure to try

---

1. The Honorable Karen S.S. Ahn presided.

2. HRS § 707–705(1) states that "a person is guilty of the offense of negligent injury in the first degree if that person causes serious bodily injury to another person by the operation of a motor vehicle in a negligent manner."

it with the fraud case. We conclude the two cases did not arise from the same episode because the negligent injury case was not closely related to the fraud case in time, place, and circumstances. *See State v. Carroll*, 63 Haw. 345, 350, 627 P.2d 776, 780 (1981).

For the foregoing reasons, we affirm the court's July 7, 2003 judgment.

## I.

On the morning of November 18, 2000, Defendant fell asleep while driving his van westbound on the H–1 freeway. At 4:49 a.m., Defendant's van drifted across three lanes of freeway and rear-ended a parked car, injuring both his friend, Kameron Kealoha (Kealoha), a front seat passenger in the van, and Lawrence Smith (Smith), the driver of the parked car. Kealoha suffered a concussion, injury to his aorta, severe facial lacerations, and cranial contusions from the accident. He was taken to the hospital by ambulance in critical condition.

Defendant lacked insurance coverage when he caused the accident, but obtained an insurance policy later that same day. After obtaining the policy, he falsely represented the date and time of the accident as occurring subsequent to the initiation of the policy.

Honolulu Police Department (HPD) Officer Carl Medeiros (Medeiros) was immediately assigned to investigate the November 18, 2000 accident. Medeiros had four serious cases (not counting follow-ups) and at least twenty to twenty-five non-serious cases assigned to him, when he received the assignment.

Medeiros testified that on November 18, 2000, the police took a HPD Form 252 statement from Defendant who admitted that he fell asleep at the wheel and caused the accident. On the same day, HPD officer Greg Lopez completed a motor vehicle accident report diagramming the scene of the accident. In addition, police officers were sent to the hospital to obtain statements from Kealoha's treating physician.

Medeiros also went to the hospital on November 18, 2000. However, he had difficulty contacting Kealoha, which he claimed delayed his ability to "confer" the negligent injury case with the prosecutor's office. When Medeiros first contacted Kealoha three days after the accident, Kealoha could not speak. Therefore, Medeiros left a HPD–13 form with Kealoha's wife "so she could sign and have the doctor complete it" before Kealoha was discharged. According to Medeiros, the facts were not clear and he could not decipher any information from the form he received.

On November 25, 2000, Kealoha was released from the hospital. Medeiros testified that he assumed he had all the necessary information to locate Kealoha, but "all of that was wrong." After Medeiros eventually located Kealoha's mother, he still had difficulty contacting Kealoha. Medeiros "finally" convinced Kealoha's mother that he needed to see Kealoha, and Kealoha's wife "finally" contacted him. Medeiros did not obtain a written statement from Kealoha or the HPD Form 252 regarding Kealoha's injuries until June 24, 2001. Based on the statement of Kealoha's surgeon, the negligent injury case was initially classified as a second degree offense.

Meanwhile, in July or August of 2001, the Insurance Fraud Division of the State of Hawai'i Department of Commerce and Consumer Affairs retained Bradley R. Pulice (Pulice) as a Special Attorney General. Pulice testified that he handled insurance fraud cases and, in addition, anything that flowed from theft. Pulice indicated he did not know about a pending criminal investigation for the negligent injury case when he received his assignment. He further testified that he did not think that the police reports reflected a contemplated negligent injury charge.

Pulice noted that he would not have handled the negligent injury case, even if he knew of it, because the two cases occurred in different time frames. Pulice explained that he did not consider referring a negligent injury case to the prosecutor's office or charging Defendant since he only dealt with causes of action arising subsequent to the accident. Pulice mentioned that his office could consider charging both the insurance fraud and negligent injury aspects if it ap-

peared they causally flowed from insurance fraud activities.

Pulice's investigation resulted in an indictment in Cr. No. 01–1–2131, whereby Plaintiff–Appellee State of Hawaiʻi (the prosecution) charged Defendant in Count I with insurance fraud, HRS § 431:10C–307.7(a)(2), and in Count II with attempted theft in the first degree, HRS §§ 705–500 and 708–830.5(1)(a). Count I alleged that on November 18, 2000 through December 7, 2000, Defendant knowingly "presented a false claim for the payment of loss to Progressive Insurance Companies, Inc. [(Progressive)] with intent to obtain benefits or recovery or compensation for benefits for services provided, to wit, insurance proceeds, the value of which exceeds [t]wenty-[t]housand [d]ollars ($20,000)" in the City and County of Honolulu, State of Hawaiʻi. Count II alleged that on November 18, 2000 through December 7, 2000, Defendant "intentionally engage[d] in conduct, which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of [t]heft in the [f]irst [d]egree, by attempting to obtain or exert control over the property of [Progressive] the value of which exceeded [t]wenty [t]housand [d]ollars ($20,000), by deception, with intent to deprive [Progressive] of the property" in the City and County of Honolulu, State of Hawaiʻi.

On December 6, 2001, Defendant pled no contest to insurance fraud and the amended charge of attempted theft in the second degree and moved for deferred acceptance of his plea pursuant to HRS § 853–1 (1993 & Supp.2003).[3] On February 25, 2002, the court granted Defendant's motion to defer his no contest plea.

On March 18, 2002, following the completion of his initial investigation in the negligent injury case, Medeiros met with the conferral deputy prosecuting attorney, Lahoma Fernandez–Nakata (Fernandez–Nakata). Fernandez–Nakata testified that at the time of the conferral, she did not have any prior knowledge of the case. She did not immediately accept prosecution and requested follow-up work including additional HPD–13 doctor forms and a second statement from Kealoha. It was not until the case was conferred that it was re-classified to the more serious first degree offense. A second statement was taken from Kealoha on March 25, 2002.

After completing the follow-up investigation, Medeiros re-conferred with Fernandez–Nakata on April 12, 2002. Fernandez–Nakata decided not to prosecute Defendant for Smith's injuries because the HPD–13 doctor form necessary to confirm the injuries was not completed and Smith was deployed by the Marines at the time. However, Fernandez–Nakata accepted the completed HPD–13 doctor forms involving Kealoha's injuries. After waiting for Medeiros to complete additional reports, the prosecutor's office formally initiated prosecution on June 17, 2002 in the negligent injury case.

On July 17, 2002, the prosecutor's office assigned the negligent injury case to deputy prosecuting attorney Susan Won. According to Fernandez–Nakata, Won briefed the case in August 2002 and then waited for an open Oʻahu Grand Jury date. Won presented the case to the Oʻahu Grand Jury on September 19, 2002. The grand jury charged that Defendant caused serious bodily injury to Kealoha, by the operation of a vehicle in a negligent manner, thereby committing the offense of negligent injury in the first degree, HRS § 707–705.

---

3. HRS § 853–1 (1993) states in relevant part:
 (a) Upon proper motion as provided by this chapter:
 (1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;
 (2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and

 (3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,
 the court, without accepting the plea of nolo contendere or entering a judgment of guilty and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

178

On December 26, 2002, Defendant filed a "Motion to Dismiss Indictment for Pre–Indictment Delay." Defendant claimed that the delay violated his right to due process of law under Article I, Sections 5, 8, and 14 of the Hawai'i State Constitution and the 5th and 14th Amendments of the United States Constitution.

Defendant's counsel calculated the length of the delay to be 670 days. Counsel's declaration stated that if the negligent injury case "had been charged in a timely manner, either at the same time or at least before the sentencing date of February 25, 2002 in [the fraud case], ... [D]efendant could have incorporated both cases for sentencing/disposition at the same time and moved for a deferred acceptance of his pleas on all cases." As a result, counsel argued that Defendant, "statutorily precluded from receiving a deferred acceptance plea ... was substantially prejudiced by the lengthy delay in indicting this case."

The prosecutor's office submitted its memorandum in opposition to Defendant's motion to dismiss on January 21, 2003. The prosecution argued that the statute of limitations had not lapsed, separate prosecutions were warranted under HRS § 701–109(2), the "lost deferral opportunity" did not implicate the right to a fair trial and was speculative, and the delay did not rise to a level requiring dismissal.

On February 10, 2003, after hearing testimony from witnesses and considering the arguments, the court denied the motion to dismiss. The court explained that the delay in indictment was justified due to the nature of the injuries and the difficulty in obtaining statements from the witnesses. The court noted that the possibility of a deferral did not implicate the right to a fair trial.

Subsequently, on April 14, 2003, the court filed its Findings of Fact, Conclusions of Law and Order Denying Motion to Dismiss Indictment for Pre–Indictment Delay ("order").

On May 5, 2003, Defendant entered a conditional plea of no-contest and reserved the right to appeal the order. On July 7, 2003, Defendant was sentenced to five years' pro-

bation, with terms and conditions, and ordered to pay restitution.

On September 5, 2003, Defendant filed a notice of appeal from the July 7, 2003 judgment and sentence.

## II.

On appeal, Defendant contends that (1) his due process rights were substantially prejudiced by the prosecution's unreasonable and avoidable delay and (2) the negligent injury case should have been dismissed pursuant to HRS §§ 701–109(2) and 701–111(1)(b) because the negligent injury charge and fraud charge should have been tried together. Defendant requests that this court reverse the order denying its motion to dismiss or, in the alternative, vacate the order and remand the case for further proceedings.

The prosecution in its answering brief argues that the court did not err in denying Defendant's motion to dismiss because Defendant failed to meet his burden of demonstrating actual substantial prejudice, the prosecution's delay was reasonable, and HRS § 701–109(2) did not apply. The prosecution requests that this court affirm the judgment.

## III.

■ Both the "clearly erroneous" and "right/wrong" tests must be employed in reviewing the circuit court's denial of a motion to dismiss for preindictment delay. *State v. Martinez*, 101 Hawai'i 332, 339, 68 P.3d 606, 613 (2003). "A trial court's [findings of fact] are reviewed under the 'clearly erroneous' standard." *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations omitted).

■ A trial court's conclusions of law are reviewed under the "right/wrong" standard. *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994). "A [conclusion of law] is not binding upon an appellate court and is

freely reviewable for its correctness." *Id.* This "court examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it." *Island Ins. Co. v. Perry,* 94 Hawai'i 498, 501, 17 P.3d 847, 850 (App.2000) (internal quotation marks and citation omitted) (brackets in original).

## IV.

 The court did not err in denying Defendant's motion to dismiss because Defendant failed to establish that he suffered actual substantial prejudice to his right to a fair trial. "[T]he applicable statute of limitations ... is ... the primary guarantee against bringing overly stale criminal charges." *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (quoting *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)).[4] However, in *State v. Carvalho,* 79 Hawai'i 165, 880 P.2d 217 (App.1994), it was noted that the United States Supreme Court first recognized in *Marion* that "the statute of limitations does not fully define the [defendant's] rights" to a fair trial and that "events occurring prior to [the formal criminal charge]" may "cause substantial prejudice to [such] rights[.]" *Id.* at 167, 880 P.2d at 219 (quoting *Marion,* 404 U.S. at 324, 92 S.Ct. 455).[5] Therefore, the *Carvalho* court determined that "the due process inquiry must consider the reasons for the delay [in prosecution] as well as the prejudice to the accused." *Id.* (brackets in original) (quoting *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)).

 Accordingly, "[w]hen a defendant alleges a violation of due process based on preindictment delay, the court must employ a balancing test, considering actual substantial prejudice to the defendant against the rea-

sons asserted for the delay." *State v. Higa,* 102 Hawai'i 183, 187, 74 P.3d 6, 10 (2003) (citing *State v. Crail,* 97 Hawai'i 170, 178–79, 35 P.3d 197, 205–06 (2001); *State v. Levi,* 67 Haw. 247, 249, 686 P.2d 9, 10–11 (1984); *State v. English,* 61 Haw. 12, 17–18, 594 P.2d 1069, 1073–74 (1978)). However, "[i]f a defendant fails to show actual substantial prejudice, the inquiry ends and the reasons for the delay need not be addressed." *Id.* (citing *Crail,* 97 Hawai'i at 180, 35 P.3d at 207; *Carvalho,* 79 Hawai'i at 170, 880 P.2d at 222).

Defendant argues that he suffered actual substantial prejudice because if there were no delay, he "could have consolidated the cases for sentencing purposes and would have been able to move for a deferral [of acceptance of guilty pleas] on all the offenses in both cases." In *Higa,* it was recognized that the U.S. Supreme Court in *Marion* and *Lovasco* "contemplated a due process claim to include challenges to a defendant's ability to present a defense[,]" but did not define the precise circumstances in which preindictment delay would require the dismissal of charges. *Higa,* 102 Hawai'i at 188, 74 P.3d at 11 (citing *Marion,* 404 U.S. at 320, 324, 92 S.Ct. 455; *Lovasco,* 431 U.S. at 785, 97 S.Ct. 2044). However, *Higa* held that "lost opportunities for concurrent sentencing, parole, and loss of parental rights, as asserted [t]herein, do not affect a defendant's ability to present an effective defense, and thus, do not constitute actual substantial prejudice to a defendant's due process right to a fair trial." *Id.* at 189, 74 P.3d at 12.

Defendant maintains that the "*Higa* court did not consider how lost opportunity related to sentencing was an actual prejudice itself[.]" He attempts to distinguish his case from *Higa* on the grounds that (1) the indictments in *Higa* "were based on unrelated charges whereas in this case, the indictments are related[,]" (2) the defendant in *Higa* was

---

4. Statutes of limitations "represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may [during the limitation] ... have lost their means of *defence.*" *Marion,* 404 U.S. at 322, 92 S.Ct. 455 (emphasis added) (quoting *Public Schools v. Walker,* 76 U.S. (9 Wall.) 282, 288, 19 L.Ed. 576 (1869)).

5. We have indicated that "[w]hether [a d]efendant relies upon a federal or state due process claim does not significantly alter our analysis because our view of preindictment delay as an aspect of the right of due process is substantially similar to that applied under the United States Constitution." *State v. Crail,* 97 Hawai'i 170, 173 n. 4, 35 P.3d 197, 200 n. 4 (2001) (citation omitted).

aware of pending charges, whereas Defendant was not aware of any pending charges when sentenced for the fraud case, (3) the delay adversely affected Defendant's trial strategy and possible defenses, and (4) the "delay prejudiced [his] ability to make an intelligent and informed decision regarding whether to waive his rights to trial and to contest" the charges in the fraud case.

His claims (1) and (2) relate to his argument concerning HRS § 701–109(2) discussed *infra.* With respect to (3) and (4), insofar as these considerations are related to the absence of concurrent sentencing, they are foreclosed by *Higa.* In the absence of specific facts, claims (3) and (4) amount essentially to the complaint that had the cases been subject to consolidation, Defendant would have been able to move for a deferral of a plea in both cases. In this regard, we note that a deferred acceptance of guilty plea or a deferred acceptance of no contest plea is an authorized disposition afforded to a defendant by the court in certain defined instances "to enable a defendant to retain a 'record free of a criminal conviction' by deferring a guilty [or no contest] plea for a designated period and imposing special conditions which the defendant was to successfully complete." *State v. Putnam,* 93 Hawai'i 362, 368, 3 P.3d 1239, 1245 (2000) (quoting 1976 Haw. Sess. L. Act 154, § 2, at 279). Such a plea is not a defense or involved in the presentation of a defense. As HRS § 701–115(1) states, "[a] defense is a fact or set of facts which negatives penal liability."

Also, as Defendant acknowledges, there is no assurance that a defendant will be granted a deferral of his or her guilty or no

contest plea inasmuch as the court has discretion as to whether to grant one. In *Carvalho,* it was recognized that "in a claim of pre-indictment delay, 'the proof must be definite and not speculative in order to establish prejudice.'" 79 Hawai'i at 169, 880 P.2d at 220 (quoting *State v. Broughton,* 156 Ariz. 394, 398, 752 P.2d 483, 487 (1988)). Hence, the "possibility of a deferral" does not amount to definite proof of prejudice.

Finally, while the possibility of plea bargaining may be part of the calculus in determining the overall posture of a defendant in any particular case, this consideration, like those posed in *Higa,* is not specifically implicated in the presentation of a defense to a charged offense at a trial. In sum, Defendant's inability to request deferral of his plea as to the negligent injury charge did not affect his ability to present a defense at a trial of that charge and, therefore, did not substantially prejudice his right to a fair trial.[6]

## V.

 The court did not err by denying Defendant's motion to dismiss because HRS §§ 701–109(2) does not apply. HRS § 701–109 in pertinent part provides that "a defendant shall not be subject to separate trials for multiple offenses based on the same conduct *or arising from the same episode,* if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court." HRS § 701–109(2) (emphasis added). Under HRS § 701–111(1)(b),[7] the prosecution is prohibit-

---

6. Since Defendant failed to establish he suffered actual substantial prejudice to his right to a fair trial, there is no imperative to consider the reasons for the prosecutorial delay. *Carvalho,* 79 Hawai'i at 170, 880 P.2d at 222; *see Higa,* 102 Hawai'i at 187, 74 P.3d at 10; *Crail,* 97 Hawai'i at 180, 35 P.3d at 207. We observe that the record indicates that the prosecution's reasons for preindictment delay were reasonable in light of the circumstances of the case. First, Medeiros had difficulty contacting Kealoha, the complainant, in addition to other difficulties mentioned *supra.* Medeiros was assigned four serious cases (not counting follow-ups) and at least twenty to twenty-five non-serious cases, when he received the negligent injury case. Second, once Medei-

ros conferred the case with the prosecutor's office, the prosecution acted promptly.

7. HRS § 701–111(1)(b) in relevant part provides:
 **When prosecution is barred by former prosecution for a different offense.** Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:
 (1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701–110(3) and the subsequent prosecution is for:
 ....

ed from prosecuting a defendant for any offense which should have been joined in a prior trial under HRS § 701–109(2).[8] Defendant argues that the court erred in denying his motion to dismiss because (1) the offenses in the fraud case and negligent injury case arose from the same episode and (2) the prosecuting officer was aware of the possibility of other charges.

 Contrary to Defendant's argument, the offenses in the fraud case and negligent injury case did not arise from the same episode. One of the purposes of HRS § 701–109(2) is "to prevent the State from harassing a defendant with successive prosecutions where the State is dissatisfied with the punishment previously ordered or where the State has failed to convict the defendant." *State v. Servantes,* 72 Haw. 35, 38, 804 P.2d 1347, 1348 (1991). However, there is no evidence in the record that the prosecution attempted to harass Defendant by prosecuting the subsequent negligent injury case. *See State v. Solomon,* 61 Haw. 127, 134, 596 P.2d 779, 784 (1979) ("This is not a case of a prosecutor harassing a defendant with multiple prosecution for closely related offenses because of dissatisfaction with the punishment previously meted out or because of previous failure to convict.")

"HRS § 701–109(2) [does] reflect[ ] a policy that all charges that arise under one episode be consolidated in one trial so that a defendant need not face the expense and uncertainties of multiple trials based on essentially the same episode." *Servantes,* 72 Haw. at 38, 804 P.2d at 1348 (citing Commentary on HRS § 701–109). In formulating HRS § 701–109(2), it can be inferred that the legislature "did not intend a determination of a single criminal 'episode' to be based solely upon a defendant's singular criminal objective or common purpose or plan." *Carroll,* 63 Haw. at 350–51, 627 P.2d at 780 (citing

> (b) Any offense for which the defendant should have been tried on the first prosecution under section 701–109 unless the court ordered a separate trial of the offense[.]

**8.** "HRS §§ 701–111 and 701–109(2) should generally be read in conjunction with each other, *see*

commentary accompanying Model Penal Code § 1.07 (Proposed Official Draft, 1962)).

 The relevant "test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." *Servantes,* 72 Haw. at 38–39, 804 P.2d at 1349 (quoting *Carroll,* 63 Haw. at 351, 627 P.2d at 780). Applying this test, Defendant's contention that the criminal offenses arose from the same episode must be rejected.

Defendant argues that the negligent injury case is so closely related in time (everything occurred on the same day), place (City and County of Honolulu, State of Hawai'i), and circumstances (the accident was caused by Defendant, Defendant knew that he did not have insurance, Defendant made a false insurance claim related to the accident) that a complete account of one charge (insurance fraud) cannot be related without referring to details of the other (negligent injury). "[P]roximity in time, place, and circumstances of the offenses will necessarily enter into the policy considerations underlying HRS § 701–109(2)." *Carroll,* 63 Haw. at 351, 627 P.2d at 780. However, Defendant's argument fails for several reasons.

First, although the motor vehicle accident and fraudulent insurance claim occurred on the same day, they did not occur at the same time. Defendant committed insurance fraud and attempted theft from the insurance company subsequent to the accident that caused injury to Kealoha.

Second, although the record does not so indicate, the places where Defendant committed the offenses were presumably different. Furthermore, defining "place" as broadly as the entire City and County of Honolulu would unduly hamper the administration and application of HRS § 701–109(2).

Commentary on HRS § 701–111, for both statutory provisions may be regarded as effectuating 'the policy of preserving the defendant from numerous, and vexatious prosecutions.' " *State v. Aiu,* 59 Haw. 92, 98, 576 P.2d 1044, 1049 (1978) (quoting Commentary on HRS § 701–111).

Third, the circumstances of the cases were not similar. "Where the offenses occur at the same time and place and under the same circumstances, it is likely that the facts and issues involved in the charges will be similar." *Carroll*, 63 Haw. at 350, 627 P.2d at 780. However, in this case, the facts and issues involved in the charges (namely, the statutory requirements of the alleged offenses) are dissimilar.[9]

Because the criminal offenses in question are not closely related in time, place and circumstances, they did not arise from the same "episode." Consequently, HRS §§ 701–109(2) does not apply to this case.[10]

Defendant attempts to draw an analogy between his situation and *Servantes*. In *Servantes*, this court concluded that "the State was barred under [HRS] § 701–109(2) from prosecuting [the defendant] for felony offenses by his conviction on the misdemeanor marijuana possession charge." 72 Haw. at 39, 804 P.2d at 1349. In that case, police officers had observed a passenger in the defendant's car smoking a marijuana cigarette. *Id.* at 36, 804 P.2d at 1348. When the passenger exited the car, the officer noticed a bag of marijuana next to the defendant's foot. *Id.* The bag was seized and the defendant and his passenger were arrested for promoting a detrimental drug in the third degree, a misdemeanor. *Id.*

The defendant's car was towed to the police station. *Id.* at 37, 804 P.2d at 1348. Four days later the police executed a search warrant for the car and seized cocaine and drug paraphernalia from it. *Id.* The defendant was then charged with promoting a dangerous drug in the third degree and possession with intent to use drug paraphernalia, both Class C felonies. *Id.*

In reversing the circuit court's determination that the misdemeanor and felony charges arose from separate episodes, this

court reasoned that the "police had probable cause at the time of [the defendant's] arrest on the [misdemeanor] marijuana offense to suspect [the defendant] of possession of additional illegal drugs" and that at the motion to suppress in the felony case, reference must be made to the circumstances giving rise to the misdemeanor case. *Id.* at 39, 804 P.2d at 1349. Thus, this court concluded "[a] *fortiori*, the felony charges cannot be tried without mention of the misdemeanor offense." *Id.*

This case is distinguishable from *Servantes*. Here, there was no reason to suspect that subsequent to causing the motor vehicle accident, Defendant would obtain an insurance policy and then file a fraudulent insurance claim. Furthermore, unlike the offenses involved in *Servantes*, the negligent injury charge can be tried without mention of the fraud case. Therefore, *Servantes* is not analogous to the case at bar.

## VI.

For the reasons stated above, the court's July 7, 2003 judgment is affirmed.

---

9. Examples of crimes arising from the same criminal episode include "'the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnaping and robbery.'" *State v. White*, 92 Hawaiʻi 192, 199, 990 P.2d 90, 97 (1999) (quoting II American Bar

Association *Standards for Criminal Justice*, § 12–2.2, at 12–21 (2d ed. Supp.1986)).

10. Inasmuch as we conclude the same episode requirement of HRS § 701–109(2) was not satisfied, we need not consider Defendant's additional argument that Pulice was aware of the possibility of a negligent injury charge.